[Nos. 29184-0-I; 29188-2-I.   Division One.   April 11, 1994.]

THE STATE OF WASHINGTON, *Appellant*, v. CARLOS HUMBERTO AGUIRRE, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *James J. Konat, Deputy,* for appellant.

*Robert Gomulkiewicz; Robert G. Nylander* and *Talmadge & Cutler, P.S.,* for respondent.

KENNEDY, J. — The State of Washington appeals the trial court's order vacating Carlos Humberto Aguirre-Colindres'[1] convictions under the Uniform Controlled Substances Act for cocaine and heroin possession and for delivery of heroin. The State argues that the trial judge abused his discretion by using CrR 7.8(b)(5) to vacate the convictions for the purpose of affecting Aguirre-Colindres' deportability status.[2] Although we believe Mr. Aguirre-Colindres' history of perse-

---

[1] The information in each of the consolidated cases refers to Mr. Aguirre-Colindres as Mr. Aguirre. Mr. Aguirre-Colindres' counsel on appeal also referred to him as Mr. Aguirre, during oral argument. In the record, and in the briefs for this appeal, he is referred to as Mr. Aguirre-Colindres. Accordingly, we will use that designation.

[2] CrR 7.8 provides in relevant part:

"(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons:

"(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;

cution and misfortune to be compelling, the trial judge issued what was, in effect, a judicial pardon. Article 3, section 9 of the Washington Constitution vests the power to pardon solely in the Governor. A judge may not utilize CrR 7.8(b)(5) to effect a judicial pardon. Accordingly, we reverse.

## FACTS

Aguirre-Colindres was born in Antiquizaya, El Salvador, in 1957. When Salvadoran death squads began killing and torturing individuals in Antiquizaya, Aguirre-Colindres moved to Santa Ana to work for his father. In the summer of 1980, Aguirre-Colindres had occasion to return to Antiquizaya. He was stopped by armed Salvadoran civil patrolmen who demanded to see his papers. They forced him to walk to a coffee plantation, accusing him of belonging to a guerilla organization. At the plantation, the soldiers beat him about the face, head and groin with their rifles and the handles of their machetes. Aguirre-Colindres lost consciousness and the patrolmen left him for dead.

Aguirre-Colindres recovered from this beating 2 months later. He again began working for his father in Santa Ana. While Aguirre-Colindres remained in Santa Ana, the death squads continued to look for him in Antiquizaya. They never found Aguirre-Colindres, but they did find his cousin who lived in Antiquizaya. They accused the cousin of being a guerilla, just as they had Aguirre-Colindres. They dragged the cousin into his front yard and murdered him, before his mother's eyes. When she screamed, they murdered her as well.

Aguirre-Colindres, fearing this same fate, fled to the United States shortly thereafter.

Soon after arriving in the United States, Aguirre-Colindres began applying for legal alien status under the then current

"(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.6;

"(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

"(4) The judgment is void; or

"(5) *Any other reason justifying relief from the operation of the judgment.*" (Italics ours).

amnesty statute. The application required a medical examination, including an HIV screening. Aguirre-Colindres visited the proper doctor. As a result of both men's difficulty with English, Aguirre-Colindres left the examination believing that he had AIDS.

Thinking himself ineligible for amnesty for this reason, Aguirre-Colindres did not complete his application. He became depressed, believing that deportation mattered little in light of the fact that he suffered from an incurable disease. He began associating with the wrong crowd, and became involved in drugs.

On October 24, 1988, Aguirre-Colindres pleaded guilty to possession of cocaine and heroin and delivery of heroin ($25 worth) in violation of RCW 69.50.401(d) and RCW 69.50.401(a) respectively. He was sentenced to 15 months' incarceration on these charges. He was released in June or July of 1989, having served his sentence.

After his release, Aguirre-Colindres was turned over to the Immigration and Naturalization Service (INS) in Seattle, due to his illegal alien status. Aguirre-Colindres was surprised that, during his previous incarceration, no one had said anything to him about having AIDS, despite the fact that blood samples had been taken by prison officials. With renewed hope, he contacted Northwest Immigrant Legal Services (NILS) and asked them to find the doctor who administered the HIV screening. The NILS attorney found the doctor and discovered that Aguirre-Colindres was not HIV positive. Having been given a new lease on life, Aguirre-Colindres then asked the attorney to represent him in his application to the INS for asylum. Aguirre-Colindres applied for asylum on August 21, 1989.

Mr. Aguirre-Colindres' asylum petition was denied on October 17, 1989. He appealed to the Board of Immigration Appeals. The Board found Aguirre-Colindres to be credible and eligible for asylum, but in its discretion denied the appeal due to 'his state drug convictions. Aguirre-Colindres appealed to the Ninth Circuit, which stayed the appeal

pending the outcome of Aguirre-Colindres' case filed in federal district court.

In 1991, all Salvadoran and Guatemalan refugees in the United States were granted de novo asylum hearings due to prejudice in prior proceedings. *See American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991). Aguirre-Colindres, however, was informed that he would not be granted a de novo hearing due to his state convictions. This decision is the basis for Aguirre-Colindres' suit in federal district court.

On July 31, 1991, Aguirre-Colindres moved in King County Superior Court to vacate his state convictions. The State did not file an opposing brief and did not appear to oppose the motion. Twice, the State failed to appear for these proceedings. The second court date was specifically set to accommodate the State. On August 15, 1991, the trial judge granted Aguirre-Colindres' motion to vacate his convictions.

The State finally appeared on August 20, 1991, and orally opposed the trial judge's decision to vacate Aguirre-Colindres' convictions. The State did not, however, submit a memorandum opposing Aguirre-Colindres' motion and did not apprise the court of the constitutional grounds now argued in this appeal. The trial judge again granted Aguirre-Colindres' motion to vacate. In the order, the trial judge explicitly stated that he felt Aguirre-Colindres could not receive a fair asylum hearing if the convictions stood. The court relied solely on CrR 7.8(b)(5) in support of the order. The State then filed this timely appeal.

## DISCUSSION

■■ The decision to vacate a sentence pursuant to CrR 7.8(b)(5) rests in the sound discretion of the trial court. The State contends that the trial court abused its discretion by vacating Aguirre-Colindres' convictions. Discretion is abused when it is manifestly unreasonable, or is exercised based on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

# I

## Procedural Issues

Aguirre-Colindres asks this court to decline to address the State's contentions on appeal, in that RAP 2.5(a) bars an appellant from making arguments on appeal not made to the trial judge. RAP 2.5(a) reads in relevant part:

> The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right.

Despite the State's contentions to the contrary, the record reflects that it argued only two points before Judge Fox: (1) that the case was not ripe, as there was a pending federal case, and (2) that Aguirre-Colindres' belief that he had AIDS was irrelevant to the determination of his guilt. The State did not bring the separation of powers issue to the attention of Judge Fox.

An appellate court usually reviews only issues which the record shows have been argued and decided at the trial court level. *State v. Davis*, 41 Wn.2d 535, 250 P.2d 548 (1952); *Metcalf v. Metcalf*, 57 Wn.2d 612, 358 P.2d 983 (1961); *Buchseib/ Danard, Inc. v. Skagit Cy.*, 99 Wn.2d 577, 663 P.2d 487 (1983). A party cannot reargue on appeal a motion to which it did not reply at the trial level. *Malgarini v. Washington Jockey Club*, 60 Wn. App. 823, 807 P.2d 901 (1991). Ordinarily, when the State has been so blatantly remiss as it has been in the instant case, we would refuse to even consider its appeal.

However, appellate courts have an obligation to correct manifest constitutional error. Accordingly, we will exercise our discretion and review the State's separation of powers argument despite the fact that it was not raised before the trial court. *Cf. Port of Edmonds v. Northwest Fur Breeders Coop., Inc.*, 63 Wn. App. 159, 164, 816 P.2d 1268 (1991) (citing *Falk v. Keene Corp.*, 113 Wn.2d 645, 659, 782 P.2d 974 (1989) ("An appellate court has inherent authority

to consider issues which the parties have not raised if doing so is necessary to a proper decision.")), *review denied*, 118 Wn.2d 1021 (1992).

## II
## CrR 7.8(b)(5) and the Pardoning Power

A trial judge should not vacate a conviction pursuant to CrR 7.8(b)(5) absent "extraordinary circumstances not covered by any other section of the rule". *State v. Brand*, 120 Wn.2d 365, 369, 842 P.2d 470 (1992). "Extraordinary circumstances" must relate to " ' " 'irregularities which are extraneous to the action of the court or go to the question of the regularity of its proceedings.' " ' " *Shum v. Department of Labor & Indus.*, 63 Wn. App. 405, 408, 819 P.2d 399 (1991) (quoting *In re Marriage of Flannagan*, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985) (quoting *State v. Keller*, 32 Wn. App. 135, 141, 647 P.2d 35 (1982) (quoting *Marie's Blue Cheese Dressing, Inc. v. Andre's Better Foods, Inc.*, 68 Wn.2d 756, 758, 415 P.2d 501 (1966))), *review denied*, 105 Wn.2d 1005 (1986). The Washington Supreme Court has said that a conviction should be vacated only in those limited circumstances "where the interests of justice most urgently require." *State v. Shove*, 113 Wn.2d 83, 88, 776 P.2d 132 (1989).[3]

We do not decide what constitutes "extraordinary circumstances", or whether that standard was met in the instant case. We hold that, however broad a trial judge's discretion may be under CrR 7.8(b)(5), it is not so broad as to intrude on the power to pardon vested solely in the Governor. The trial judge's use of CrR 7.8(b)(5) to forgive Aguirre-Colindres his crimes for the sole purpose of affecting his deportability status violated the doctrine of separation of powers under the state constitution.[4]

---

[3]The parties do not dispute the legal standard to be applied under CrR 7.8(b)(5).

[4]Despite his best intentions, the trial judge's action would likely have little effect on the outcome of Aguirre-Colindres' asylum proceedings, according to our understanding of *Weidersperg v. INS*, 896 F.2d 1179 (9th Cir. 1990). The *Weidersperg* court (quoting *Estrada-Rosales v. INS*, 645 F.2d 819, 821 (9th Cir. 1981)) stated: "a judicial pardon [or] a technical expungement of record following a probationary period . . . are insufficient to negate a conviction for the purposes of the deportation statutes." *Weidersperg*, 896 F.2d at 1182.

■ The Washington Constitution vests the pardoning power in the Governor.[5] While the Legislature has the power to regulate and restrict the Governor's pardoning power, this does not give the Legislature the ability to abrogate that power. *State ex rel. Rogers v. Jenkins*, 20 Wash. 78, 54 P. 765 (1898). In *Rogers* the court held that the Secretary of State, who was a member of the State Board of Pardons, a body created by the Legislature, could not block a pardon by the Governor by refusing to affix the Great Seal to the pardon decree. *Rogers*, 20 Wash. at 79.

In *In re Costello*, 22 Wn.2d 697, 157 P.2d 713 (1945), the appellant had been given a conditional pardon by the Governor. However, because he was found to be frequenting taverns and brandishing a pistol at soldiers, the pardon was revoked. Meanwhile, the Board of Prison Terms and Paroles had issued a final discharge to Costello.[6] Costello relied on this discharge to argue that the pardon revocation was meaningless. The court disagreed. It believed that the discharge was an attempt by the Board to eliminate the pardon's conditional terms. It held,

> [w]here the power is given to the governor by the constitution in unrestricted terms, it cannot be taken away, *nor can a like power be given by the legislature to any other officer or authority.*

(Italics ours.) *Costello*, 22 Wn.2d at 705. Accordingly, the Board's release of Costello was "a nullity" because it interfered with the Governor's right to pardon Costello or not. *Costello*, 22 Wn.2d at 705-06.

---

[5]Const. art. 3, § 9 reads:

"The pardoning power shall be vested in the governor, under such regulations and restrictions as may be prescribed by law."

[6]The discharge in *Costello*, 22 Wn.2d at 699 read, in part:

"'WHEREAS, it now appears that no useful purpose will be served by continuing . . . Thomas W. Costello on parole,

"'NOW, THEREFORE, the Board of Prison Terms and Paroles of the State of Washington, by virtue of the authority vested in it by the laws of said state, does hereby release and discharge said Thomas W. Costello from any further obligation imposed upon him as a condition of his said parole.'" (Italics omitted.)

■ Aguirre-Colindres argues that a vacation of judgment is not equivalent to a pardon. This argument actually undercuts his position. In Washington, a Governor's unconditional pardon does not expunge the crime pardoned from the pardon recipient's record. *State v. Cullen*, 14 Wn.2d 105, 110, 127 P.2d 257 (1942). It merely forgives the crime by commuting the sentence. The rationale for this stems from the nature of the pardon itself; by a pardon, the Governor forgives the individual for the crime committed. Such forgiving implies that guilt was established. *Cullen*, at 109. Therefore, if the same individual is convicted of a subsequent crime, he or she can be sentenced as if this were the second crime.

A vacation of Aguirre-Colindres' convictions, however, would eliminate those convictions from his record. Therefore, the trial judge's action vacating Aguirre-Colindres' convictions actually *exceeds* the scope of the pardon power given to the Governor. It would be an absurd result if a farther-reaching, more powerful judicial pardon, called a vacation of conviction, did not violate the Washington Constitution.

Aguirre-Colindres also argues that, if *Costello* is applicable, CrR 7.8(b)(5) has been made unconstitutional. This position confuses the issue. The *Costello* court deemed an act by the Board unconstitutional without ruling that the Board itself was unconstitutional. The court held that the Board, as a creation of the Legislature, had simply overreached its constitutional powers. Only when utilized to grant a judicial pardon does CrR 7.8(b)(5) interfere with the constitutional prerogative of the Governor.[7]

We recognize that the Board of Immigration Appeals found Aguirre-Colindres to be credible, and deemed him

---

[7]*Cf. State v. Cantrell*, 111 Wn.2d 385, 388-89, 758 P.2d 1 (1988) (recognizing that the exercise of CrR 8.3(b), which gives a trial judge the right to dismiss a prosecution if "in the furtherance of justice", is tempered by underlying separation of powers concerns between prosecutors and the judiciary, such that a judge cannot dismiss a prosecution solely because he or she disagrees with the prosecutor's judgment).

eligible for asylum. His state convictions remain the biggest barrier to his quest for legal alien status. We applaud the humanitarian concerns which led the trial judge to attempt to remove this barrier. Unfortunately for Aguirre-Colindres, we believe that the Washington Constitution does not permit a judge to place himself in the position of the Governor.

In light of this opinion, we need not reach the State's federal supremacy clause or RCW 10.73.090 statute of limitations arguments. We also find that the State's appeal was not frivolous. Accordingly, we must deny Aguirre-Colindres' request to be awarded attorney fees for responding to this appeal.

Reversed.

BAKER and AGID, JJ., concur.

Review denied at 124 Wn.2d 1028 (1994).