# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46330-0-II |
| Respondent, | |
| v. | |
| BRIAN DELISLE, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Brian DeLisle appeals the superior court's denial of his CrR 7.8 motion to withdraw his guilty plea to one count of attempting to elude a pursuing police vehicle. He argues that the superior court erred when it concluded that (1) he failed to prove he was incompetent when he entered his guilty plea, and (2) he did not receive ineffective assistance of counsel based on his counsel's failure to interview potential witnesses or investigate the competency issue. We hold that (1) the superior court abused its discretion when it denied DeLisle's motion to withdraw his guilty plea based on DeLisle's incompetency claim because it failed to apply the preponderance of the evidence standard and (2) the superior court did not err in denying DeLisle's ineffective assistance of counsel claim. Accordingly, we affirm the superior court's denial of DeLisle's ineffective assistance of counsel claim, reverse its denial of DeLisle's incompetency claim, and remand for the superior court to apply the correct legal standard to the existing findings of fact on DeLisle's incompetency claim.

FACTS

I. CHANGE OF PLEA HEARING AND SENTENCING

The State charged DeLisle with attempting to elude a pursuing police vehicle and third degree driving while license suspended or revoked. DeLisle hired attorney George Trejo to represent him in this matter. On April 18, 2012, DeLisle entered a guilty plea to the attempting to elude a pursuing police vehicle charge. The other charge was dismissed under the plea agreement.

During the change of plea hearing, the superior court engaged in detailed discussions with DeLisle to confirm that he understood the consequences of his plea. The court also advised DeLisle that he could have additional time to confer with counsel if he felt he needed it. The superior court then reviewed DeLisle's rights and attempted to verify that DeLisle understood the rights he was giving up by pleading guilty. Although DeLisle stated that he understood, the superior court commented, "You look like you're having questions," and then reiterated the rights DeLisle was giving up and mentioned several additional consequences of the plea. Report of Proceedings (RP) at 4. DeLisle confirmed that he understood. The superior court accepted the plea and proceeded to sentencing.

The State recommended a 90-day sentence and did not object to work release. Trejo argued for electronic home monitoring, noting that DeLisle had medical issues because of a head injury and that he was on "a number of different medications." RP at 10. Trejo also stated that DeLisle had presented additional medical information at a previous bail hearing that disclosed that he suffered from "acute psychosis, seizure disorders, anxiety as well as paranoid delusions."[1] RP at

---

[1] The bail hearing record is not part of the appellate record.

10. Trejo further commented that DeLisle had suffered some seizures while in custody. The superior court sentenced DeLisle to 90 days, the low end of the standard range, with 37 days credit for time served, and the remainder to be served on work release. During this hearing, no one raised any issues about DeLisle's competency to enter his plea.

## II. MOTION TO WITHDRAW PLEA

On April 15, 2013, almost a year after he pleaded guilty, DeLisle filed a motion to withdraw his guilty plea.[2] He argued that he should be allowed to withdraw his plea because (1) he had not been competent to enter the plea due to his mental health issues, and (2) he received ineffective assistance of counsel.

DeLisle attached several exhibits to his motion. One exhibit was a letter from his psychologist, Mark Clark, stating that DeLisle had a cognitive disorder secondary to closed head injury, that he occasionally had seizures which he controlled with medication, that he suffered from posttraumatic stress disorder (PTSD), and that he might also have an underlying bipolar disorder. Clark also commented that (1) DeLisle is impulsive in his decision-making and this impulsivity is aggravated by stress, regardless of whether he is on his medications, (2) he is easily confused and has trouble tracking conversation, and (3) he has a history of substance abuse and dependence.

DeLisle also attached several jail records describing his sick calls and medication history around the time of the change of plea hearing on April 18, 2012. These records showed that DeLisle had suffered seizures on October 4, 2011, April 10, 2012, and May 16, 2012. A follow-

---

[2] Because this motion was filed after the trial court filed the judgment and sentence, we consider it to be a CrR 7.8 motion. CrR 4.2(f).

3

up entry on April 10, 2012 noted that later that same day DeLisle had reported he was "fine." Clerk's Papers (CP) at 51.

The reports also showed that (1) on March 28, although DeLisle reported having psychosis, paranoia, attention deficit disorder, and a brain injury, his thoughts were cohesive without psychosis when he was examined, but (2) on April 3, DeLisle believed he had received the wrong medications and reported auditory hallucinations, weird dreams, and concern about his "thought process." CP at 52. On April 15, he missed his medications. And on April 16, two days before the change of plea hearing, DeLisle reported that he was concerned about his blood pressure and seizures because he was having trouble staying compliant with his medications. The records showed that although his medications were available, DeLisle was not always compliant with his medications because he would not wake up in time to receive them. His medications were, however, helpful when he took them. There were no entries in these records for the date of the change of plea hearing.

III. SEPTEMBER 18, 2013 CRR 7.8 HEARING

The superior court determined that DeLisle had made a substantial showing that he was entitled to an evidentiary hearing on the motion to withdraw the plea. On September 18, the superior court held an evidentiary hearing addressing the ineffective assistance of counsel claim.

A. DELISLE'S CRR 7.8 HEARING TESTIMONY

DeLisle testified that he had hired Trejo to handle this criminal matter and a related civil forfeiture, that he met with Trejo in person only four times, and that they discussed the criminal case only the day before the change of plea hearing and at the hearing. DeLisle further testified that although he provided Trejo with a list of witnesses who could provide an alibi, Trejo did not

4

contact these witnesses. DeLisle did not, however, say who these witnesses were or what specific information they could have provided if contacted.

As to the mental health issues, DeLisle testified that he told Trejo's office about his (DeLisle's) mental health issues, but Trejo did not contact DeLisle's psychologist and never asked DeLisle if he understood the proceedings against him. DeLisle asserted that he suffered from bipolar disorder, a cognitive disorder, dementia, memory loss, paranoid delusions, a closed head injury, PTSD, a seizure disorder, and "[p]sycho-social and environmental problems related to the interaction with the legal system itself."[3] RP at 33.

DeLisle further contended that because he was not on his medication and had recently suffered a seizure in jail, he did not comprehend what was happening during the change of plea hearing and was too compromised to tell the superior court that he did not understand the proceedings. He also asserted that he had reported auditory hallucinations and a "confused thought process" while in jail. RP at 34. And he stated that when he does not take his medication, he is "not [him]self," and is confused, not very coherent, and "just not real sure what's going on around [him]." RP at 32. DeLisle stated that he had, through an e-mail sent by a third person, advised Trejo that he was not receiving his medications while in the jail.

DeLisle admitted that he had pleaded guilty to other crimes in the past, but he asserted that his poor memory prevented him from recalling what happened when he entered those pleas.[4] He

---

[3] DeLisle later clarified that one of his conditions was "an axis work condition [that] can shut [him] down when it comes to legal proceedings, mentally." RP at 41. He asserted that this reaction is amplified when he is not on his medication.

[4] He later clarified that he had not previously been convicted of a felony or participated in a change of plea hearing in superior court.

also asserted that he could not remember telling the superior court that he had read the plea, talked to counsel, or understood his rights; nor could he recall the superior court advising him that he could ask questions. When the State later asked DeLisle if he had lied when he told the superior court that he had read the plea statement, DeLisle responded that he was just repeating what was being said because of his mental health issues. He stated, "I don't really feel I was lying. I was more in a state of shock and just going through the motions." RP at 43. But DeLisle also testified on redirect that he did not "really" remember the change of plea hearing.

### B. TREJO'S CrR 7.8 HEARING TESTIMONY

Trejo testified that he began representing DeLisle in a civil forfeiture action stemming from the attempted eluding charge and that DeLisle later retained him as substitute counsel on the criminal matter. Trejo met with DeLisle four times when DeLisle was out of custody and four more times in the jail. They also had telephone contact and e-mail contact through a third party.

Trejo stated that at DeLisle's request, he had attempted to negotiate a plea on the criminal charge that would eliminate the forfeiture action, but the State refused. Trejo further testified that DeLisle also sought a plea that would reduce his sentence and that they were able to negotiate a plea that was 30 days lower than what his previous counsel had negotiated. DeLisle also wanted work release, which they were able to obtain. They had also discussed mental health court, but there was no such program available in the Clark County Superior Court.

Trejo further stated that he told DeLisle that, based on DeLisle's statements to him, DeLisle "could not testify" and Trejo did not see a viable defense given the evidence. RP at 57. Trejo denied DeLisle telling him about a possible alibi or giving him a list of possible witnesses who were not named in the police report. Trejo asserted that the only possible defense DeLisle raised

was his claim that he had been given authority by a local officer to drive an informant around town, but Trejo was unable to find evidence to support this claim.

As to DeLisle's mental health issues, Trejo testified that he knew about DeLisle's mental health issues before the plea hearing and was aware that he was being treated by a psychologist. Trejo admitted that he did not talk to DeLisle's psychologist, but he asserted that he did not observe anything during his representation suggesting DeLisle was having problems, and DeLisle understood what they talked about, understood the court, and "did not hesitate to plead guilty." RP at 82. Trejo stated that he believed DeLisle understood what was happening when he entered his plea, that DeLisle interacted appropriately and rationally during their communications, that he appeared to understand the proceedings, and that he never said he was having problems. Trejo also testified that although he had previously requested mental health evaluations for two clients, he did not do so here because DeLisle did not appear incompetent. Trejo stated that he would not have allowed DeLisle to go forward with the plea if he thought there were any competency issues. On cross-examination, Trejo testified that he was not aware that the jail staff had reported that DeLisle has been experiencing auditory hallucinations as late as April 3 or that DeLisle had suffered seizures in jail.

After Trejo's testimony, DeLisle's counsel advised the court that they were waiting for a psychological evaluation and should be able to obtain it in two weeks. The superior court had the parties schedule a follow-up hearing for a later date.

### IV. MAY 2, 2014 COMPETENCY AND CrR 7.8 HEARING

On May 2, 2014, this case came before a different judge. When the superior court asked the parties to clarify whether they were there to address the threshold issue of whether there needed

to be a competency hearing under chapter 10.77 RCW or whether that threshold had already been established at a previous hearing,[5] both parties agreed that this hearing was to conduct a full competency hearing.[6]

DeLisle submitted a psychological evaluation from psychiatrist Dr. Jerry K. Larsen. Dr. Larsen also testified for DeLisle.

Dr. Larsen's evaluation stated that as early as 2005, DeLisle had suffered from "Organic Brain Syndrome (psychosis secondary to Traumatic Brain Injury)" seizures following a closed head injury suffered in 2003, PTSD, and paranoid delusions related to a fear that the police were trying to kill him. CP at 102-03. Dr. Larsen's report stated that he relied on several records, but only two of these records, a hospital report from 2005 that described DeLisle's conditions and some "Hotmail print messages," specifically referred to any mental health or medication issues. CP at 103.

Dr. Larsen administered a "mini-mental status exam" that suggested DeLisle suffered from "some kind of cognitive deficit," which Dr. Larsen opined was a "trauma induced mild dementia." RP at 102. Dr. Larsen also administered "a standardized test to evaluate possible exaggeration or malingering." CP at 104. DeLisle's score suggested malingering or exaggeration, but Dr. Larsen stated that this result "may also be consistent with an organic Brain Syndrome, Traumatic in type, complicated by seizure activity." CP at 105. An intelligence quotient (IQ) assessment showed

---

[5] Although the record suggests that there was a hearing after the September 18, 2013 hearing but before May 2, 2014, the record from that hearing is not part of the record on appeal.

[6] The State waived its right to obtain its own independent evaluation of DeLisle.

that DeLisle's IQ was in the low/normal range "with some significant impairment, particularly in recent and to a lesser extent in remote memory." RP at 103.

Dr. Larsen also reviewed the jail medical records, which showed that prior to the plea hearing, DeLisle was taking three medications: Depakote, Lisinopril (a blood pressure medication), and Risperdal (an antipsychotic). Dr. Larsen testified that Risperdal can cause seizures and is prescribed for conditions such as paranoia, visual or auditory hallucinations, and schizophrenia. The prison notes showed that DeLisle was not taking his medications regularly, and Dr. Larsen opined that this could have led to the grand mal seizure DeLisle suffered two days before the change of plea hearing.[7] Dr. Larsen testified that such seizures can cause confusion that can last hours or days and, during that time, a person could still demonstrate organized thinking in some areas.

Dr. Larsen stated that DeLisle reported that the jail had refused to give him his medication, that he was fearful and paranoid, that he had experienced seizures two days before the change of plea hearing, and that he was forced to plead guilty for something he did not do. But DeLisle also asserted that he did not even remember "what happened." CP at 111. When DeLisle's counsel asked Dr. Larsen whether he had an opinion about DeLisle's competency when he entered his plea, Dr. Larsen testified,

> Based on the fact that he was not taking or improperly medicated, he was given an anti-psychotic which he may or may not have been taking and obviously the anti-

---

[7] Although Dr. Larsen stated that DeLisle had suffered a seizure two days before the plea hearing, the jail reports DeLisle submitted with his motion to withdraw his plea do not show that he suffered a seizure on April 16, 2012; they show that he was only "concerned about [blood pressure] and seizures" because he was having trouble staying compliant with his medications. CP at 51. The jail reports show the last seizure before the plea hearing occurred eight days before the plea hearing.

seizure medication was either wrong or he was not taking it well I think it's more likely than not that at the time the plea was offered he was fearful, he was certainly paranoid and I don't think he was competent to clearly understand what was being signed.

RP at 106-07. Similarly, in his report, Dr. Larsen opined, "Given the above situation in my opinion he was unable to rationally plead guilty." CP at 111.

On cross-examination, Dr. Larsen testified that he did not review the jail records before concluding that DeLisle had been incompetent to enter his plea. But Dr. Larsen stated that he had since reviewed the jail records and that they did not change his opinion. Dr. Larsen admitted, however, that he had relied on DeLisle's self-reported statements during the evaluation rather than the jail records and that some of DeLisle's recollections could have been incorrect.

Dr. Larsen also admitted that he had not reviewed a tape of the change of plea hearing or read a transcript of that proceeding. He testified that viewing the tape could have influenced his opinion.

## V. SUPERIOR COURT'S CrR 7.8 DECISION

The superior court denied the CrR 7.8 motion and issued written findings of fact and conclusions of law. The superior court ruled that DeLisle failed to produce substantial evidence that he was incompetent and did not establish that he received ineffective assistance of counsel. It did not, however, expressly state whether the May 2, 2014 hearing was a preliminary hearing or a full competency hearing.

The superior court found that Trejo had testified that (1) DeLisle did not advise him of a possible alibi, (2) it was "fully" DeLisle's decision to enter the guilty plea, (3) Trejo was aware that DeLisle had some mental health issues stemming from an earlier closed head injury, but he did not observe DeLisle having any psychosis or "issues with understanding," and (4) Trejo was

10

aware of the mental health evaluation process because he had clients evaluated for competency in the past, but "[h]e did not have any reason to believe [DeLisle] was incompetent." CP at 118. But the superior court noted that any discussion during sentencing about alternative confinement was focused more on accommodating DeLisle and helping him keep his job than competency.

In its conclusions of law, the superior court addressed the basic standards for a CrR 7.8 motion and described DeLisle's arguments. As to the incompetency claim, the superior court entered the following conclusions:

6.      Incompetency:
   a.      A claim that a defendant lacks the competence to plead guilty is equivalent to claiming that his plea was not voluntary. *State v. Marshall*, 144 Wn.2d 266, 281, 27 P.3d 192 (2001)[, *abrogated on other grounds by State v. Sisouvanh*, 175 Wn.2d 607, 622 n.3, 290 P.3d 942 (2012)].
   b.      Upon a motion to withdraw a guilty plea on the grounds of incompetency, a defendant must show *substantial evidence* of that incompetency. *See Marshall*, 144 Wn.2d at 270-73.
   c.      A defendant must show he was incompetent when he entered his guilty plea because a mental defect, disease and/or medications prevented him from having the capacity to understand the nature of the proceedings against him, or to assist in his defense. RCW 10.77.010(5).
   d.      Self-serving statements by the defendant are not sufficient to support a finding of substantial evidence under CrR 7.8.
   e.      The Court is not satisfied that [DeLisle] has presented *substantial evidence* of his incompetency.
   f.      The Court finds Dr. Larsen's testimony was unpersuasive, there were inconsistencies in what [DeLisle] told him, and Dr. Larsen did not rely upon outside sources of information, like a video of the guilty plea, in coming to his conclusion about [DeLisle's] state of mind in April 2011 [sic].
   g.      [DeLisle] has not met the burden of showing by *substantial evidence* that he was incompetent at the time of his guilty plea, and he has not shown an extraordinary circumstance that would warrant withdrawal of his guilty plea on the grounds of incompetency.

CP at 120-21 (emphasis added).

No. 46330-0-II

As to the ineffective assistance of counsel claims, the superior court stated the test for

ineffective assistance of counsel and entered the following conclusions of law:

> 7.    Ineffective Assistance of Counsel:
> . . . .
>        c.    George Trejo was not ineffective in his representation of [DeLisle]
>              as:
>              i.     He went over the plea document with [DeLisle],
>              ii.    There was no evidence presented to him that would have
>                     supported a defense of alibi or that he was driving an
>                     informant to the police,
>              iii.   There was no evidence of incompetency presented to Mr.
>                     Trejo;
>              iv.    He would have brought a motion pursuant to RCW 10.77 to
>                     have [DeLisle] evaluated if he felt it was appropriate;
>              . . . .
>              vi.    [DeLisle] never gave George Trejo any reason to believe he
>                     was incompetent or that he did not understand the
>                     proceedings.
>        d.    This Court has watched the recording of the guilty plea hearing held
>              on April 18, 2011 [sic], with both audio and video and concludes it
>              is clear that [DeLisle] understood what he was doing that day in
>              pleading guilty to the charge.
>        e.    There was no deficient representation, George Trejo effectively
>              represented [DeLisle] in this case.
> 8.    [DeLisle] has failed to meet his *burden of showing substantial evidence* to
>       support either his claim of incompetency or his claim that his attorney was
>       ineffective.
> 9.    [DeLisle] has not shown any extraordinary circumstance which warrants
>       withdrawal of his guilty plea.
> 10.   [DeLisle's] motion to withdraw his guilty plea pursuant to CrR 7.8 is
>       denied.

CP at 121-23 (emphasis added).

DeLisle appeals the denial of the CrR 7.8 motion.

ANALYSIS

DeLisle argues that the superior court erred in denying his CrR 7.8 motion because he

established that (1) he was not competent to enter the plea, (2) Trejo provided ineffective assistance

12

of counsel by failing to interview potential alibi witnesses, and (3) Trejo provided ineffective assistance of counsel by failing to investigate whether DeLisle's mental health issues rendered him incompetent to enter a guilty plea. We hold that the superior court erred regarding its competence determination because it applied the wrong standard of proof but that it did not err in ruling that DeLisle failed to establish ineffective assistance of counsel.

## I. CrR 7.8 STANDARDS AND STANDARD OF REVIEW

CrR 7.8 governs post-judgment motions to withdraw guilty pleas. CrR 4.2(f). Under CrR 4.2(f), the superior court must allow a defendant to withdraw his plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice." But when a defendant moves to withdraw his guilty plea after judgment, the motion must meet the requirements of both CrR 4.2(f) and CrR 7.8(b). CrR 4.2(f); *State v. Lamb*, 175 Wn.2d 121, 128, 285 P.3d 27 (2012).

We review the superior court's decision on a motion to withdraw a guilty plea for an abuse of discretion. *Lamb*, 175 Wn.2d at 127. The superior court abuses its discretion when it exercises its discretion in a manifestly unreasonable manner or when the exercise of discretion is based on untenable grounds or reasons. *State v. Aguirre*, 73 Wn. App. 682, 686, 871 P.2d 616 (1994).

A defendant can establish a manifest injustice under CrR 4.2(f) by showing that the plea was not voluntary or that trial counsel was ineffective.[8] *State v. DeClue*, 157 Wn. App. 787, 792, 239 P.3d 377 (2010) (citing *Marshall*, 144 Wn.2d at 281). A defendant's claim that he lacked competence to plead guilty is equivalent to claiming an involuntary plea. *Marshall*, 144 Wn.2d

---

[8] A defendant may also establish manifest injustice by showing that he did not ratify the plea or that the plea agreement was not kept, but these two grounds are not relevant here. *State v. DeClue*, 157 Wn. App. 787, 792, 239 P.3d 377 (2010).

at 281. "The defendant's burden when seeking to withdraw a plea is demanding because ample safeguards exist to protect the defendant's rights before the trial court accepts the plea." *DeClue*, 157 Wn. App. at 792 (citing *State v. Taylor*, 83 Wn.2d 594, 506-07, 521 P.2d 699 (1974)).

To obtain relief under CrR 7.8(b)(5), DeLisle must show extraordinary circumstances not covered by any other section of CrR 7.8. *Aguirre*, 73 Wn. App. at 688. "'Extraordinary circumstances' must relate to 'irregularities which are extraneous to the action of the court or go to the question of the regularity of its proceedings.'" *Aguirre*, 73 Wn. App. at 688 (internal quotation marks omitted) (quoting *Shum v. Dep't of Labor & Indus.*, 63 Wn. App. 405, 408, 819 P.2d 399 (1991)). Our Supreme Court "has said that a conviction should be vacated only in those limited circumstances, 'where the interests of justice most urgently require.'" *Aguirre*, 73 Wn. App. at 688 (quoting *State v. Shove*, 113 Wn.2d 83, 88, 776 P.2d 132 (1989)).

We review the written findings of fact on a CrR 7.8 motion for substantial evidence. *State v. Ieng*, 87 Wn. App. 873, 877, 942 P.2d 1091 (1997). Substantial evidence is a sufficient quantity of evidence to persuade a rational, fair-minded person that a finding is true. *State v. Schultz*, 170 Wn.2d 746, 753, 248 P.3d 484 (2011). We defer to the trier of fact on credibility issues. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Unchallenged findings of fact are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). We review challenges to conclusions of law de novo. *See State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2005).

II. CHALLENGES TO FINDINGS OF FACT

We first examine DeLisle's challenges to the findings of fact. DeLisle assigns error to findings of fact 8, 12(g), and 12(k).

Finding of fact 8 states, "The discussion during sentencing regarding alternative confinement was more about accommodation than competency. The questions regarding his work was about helping [DeLisle] keep his job, and was not about competency. The [trial] court granted [DeLisle's] request to do work release." CP at 116-17. DeLisle does not present any argument related to this assignment of error; thus, we are not required to address it. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). But even if this issue had been properly briefed, the record clearly supports this finding because the only time during the April 18, 2012 hearing that Trejo mentioned DeLisle's mental health was in the context of arguing for electronic home monitoring rather than traditional confinement or work release. Trejo never argued that DeLisle was incompetent to enter the plea. And the superior court's and State's brief comments about DeLisle's work were in the context of whether he should be granted work release.

Finding of fact 12(g) states, "It was fully [DeLisle's] decision to enter a guilty plea." CP at 118. But again, DeLisle does not present argument specifically related to this assignment of error. Although we are not required to reach this issue because DeLisle fails to support the assignment of error with argument, *Cowiche Canyon Conservancy*, 118 Wn.2d at 809, we note that this finding is supported by Trejo's testimony that it was DeLisle's own decision to enter the plea.

Finding of fact 12(k) states, "George Trejo is aware of RCW 10.77 and the process for having a client evaluated; he has had clients evaluated for competency in the past. He did not have any reason to believe [DeLisle] was incompetent." CP at 118. Again, although we are not required to reach this issue because DeLisle fails to support the assignment of error with argument, *Cowiche*

*Canyon Conservancy*, 118 Wn.2d at 809, we note that this was also a finding describing Trejo's testimony, and Trejo testified specifically to these facts.

III. COMPETENCY

We next address DeLisle's argument that the superior court erred when it concluded that he failed to establish he was incompetent to enter his guilty plea. He contends that (1) the May 2, 2014 hearing was a competency hearing, so the burden of proof was a preponderance of the evidence, and (2) the superior court abused its discretion when it applied the substantial evidence standard. The State responds that the superior court was not obligated to hold a formal competency hearing because it correctly found that DeLisle did not present substantial evidence of incompetence. We agree with DeLisle that the May 2, 2014 hearing was a competency hearing and that the preponderance of the evidence standard applied.

When a defendant brings a motion to withdraw his plea based on incompetency, a formal competency hearing under RCW 10.77.060 is required "whenever a legitimate question of competency arises." *Marshall*, 144 Wn.2d at 279. If a defendant supports his motion to withdraw a guilty plea with *substantial evidence* of incompetency, the court must either grant the motion to withdraw the plea or hold a formal competency hearing under RCW 10.77.060. *Marshall*, 144 Wn.2d at 281. The substantial evidence standard refers to a *burden of production*. *State v. Paul*, 64 Wn. App. 801, 806, 828 P.2d 594 (1992). "The function of the burden of production is to identify whether there is an issue of fact to be submitted to the trier of fact for decision" and relates to the *quantity* of evidence rather than persuasive *quality* of the evidence. *Paul*, 64 Wn. App. at 806.

16

If the defendant meets the burden of production, a competency hearing is required. *Marshall*, 144 Wn.2d at 279. During the competency hearing, the party challenging competency has the burden of proving incompetency by a *preponderance of the evidence*. *State v. Coley*, 180 Wn.2d 543, 554-55, 326 P.3d 702 (2014). The preponderance of the evidence standard is a *burden of persuasion*, and its purpose "is to define how certain the trier of fact must be before resolving an issue of fact in favor of the party having the burden of proof." *Paul*, 64 Wn. App. at 806-07. "'[E]vidence preponderates when it is more convincing to the trier than the opposing evidence,' or when the trier of fact is convinced that it is more probable than not the fact in issue is true." *Paul*, 64 Wn. App. at 807 (alteration in original) (quoting F. Cleary, *McCormick on Evidence*, § 339, at 956-64 (3d ed. 1984)); *see also State v. Otis*, 151 Wn. App. 572, 578, 213 P.3d 613 (2009). "[E]vidence is said to preponderate when the trial court reasonably finds it to be the most credible." *Paul*, 64 Wn. App. at 807 (citing *Annest v. Annest*, 49 Wn.2d 62, 298 P.2d 483 (1956)).

The State argues that the May 2, 2014 hearing was a preliminary hearing (in which the substantial evidence standard applied) and not a full competency hearing (in which the burden of proof was by a preponderance of the evidence). However, the trial court discussed this issue with the parties at the start of the May 2, 2014 hearing, and the parties agreed that the hearing was a full competency hearing. Accordingly, the superior court was required to apply the preponderance of the evidence standard of proof.

Here, the superior court's conclusions of law repeatedly state that it was determining whether DeLisle had shown substantial evidence that he was incompetent. Because the superior court applied the incorrect legal standard of substantial evidence, it abused its discretion in denying

17

DeLisle's CrR 7.8 motion insofar as it related to his incompetency claim. Accordingly, we vacate the superior court's denial of DeLisle's motion to withdraw his plea based on incompetency and remand for the same court to apply the correct legal standard of preponderance of the evidence to its existing findings of fact. *See Coley*, 180 Wn.2d at 554-55 (the party challenging competency has the burden of proving incompetency by a preponderance of the evidence).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

DeLisle next argues that the superior court erred in rejecting his ineffective assistance of counsel claims. We disagree.

### A. LEGAL PRINCIPLES

As noted above, we review the superior court's denial of a CrR 7.8 motion to withdraw a guilty plea based on an ineffective assistance of counsel claim for abuse of discretion. *Lamb*, 175 Wn.2d at 127. A defendant may obtain relief from judgment based on ineffective assistance of counsel under CrR 7.8(b)(5). *State v. Martinez*, 161 Wn. App. 436, 440-41, 253 P.3d 445 (2011).

To establish ineffective assistance of counsel, DeLisle had to show that (1) Trejo's performance was deficient, and (2) the alleged deficient performance was prejudicial. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish prejudice, DeLisle had to show a reasonable probability that the result of the proceeding would have been different absent the deficient performance. *Grier*, 171 Wn.2d at 34.

### B. FAILURE TO INTERVIEW POTENTIAL ALIBI WITNESSES

DeLisle contends that Trejo provided ineffective assistance because he failed to investigate or interview possible alibi witnesses. This argument fails on two grounds.

First, the superior court found that DeLisle did not tell Trejo about any evidence that would have supported an alibi defense.[9] Trejo's testimony that DeLisle did not provide him with a list of possible witnesses or tell him about anyone he should interview who was not named in the police report supports this finding. Although DeLisle testified otherwise, the superior court's finding demonstrates that it found Trejo's testimony more credible, and we will not review this credibility determination. *Camarillo*, 115 Wn.2d at 71. Thus, because Trejo did not know about a possible alibi defense or witnesses who might support this defense, DeLisle fails to show that Trejo's failure to investigate or interview potential alibi witnesses amounted to deficient performance.

Second, even assuming DeLisle told Trejo about possible alibi witnesses and Trejo failed to interview these individuals, DeLisle did not present anything to the superior court establishing who these witnesses were, whether they would have testified if Trejo had contacted them, or what they would have testified about. Thus, DeLisle did not present evidence from which the superior court could have determined that the result of the proceedings would have been different had Trejo interviewed these potential witnesses. Without such evidence, DeLisle failed to establish

---

[9] Although the superior court labeled this finding as a conclusion of law, it is more properly characterized as a finding of fact and we review it as such. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986) (findings of fact erroneously labeled as conclusions of law are reviewed as findings of fact).

19

prejudice. Accordingly, the superior court did not err in denying DeLisle's CrR 7.8 motion based on this ground.

### C. FAILURE TO INVESTIGATE COMPETENCY

DeLisle also argues that the superior court erred in rejecting his ineffective assistance claim based on Trejo's alleged failure to investigate DeLisle's mental health issues before DeLisle pleaded guilty. He contends that because Trejo knew about DeLisle's mental health problems and knew that he was not receiving all of his medications in the jail, Trejo's failure to investigate further by speaking to DeLisle's psychologist, treating doctor, or jail medical staff to ensure DeLisle was competent to enter the plea was deficient performance. We disagree.

To establish deficient performance on this ground, DeLisle had to show, based on the record before the superior court, that Trejo knew or should have known that DeLisle's mental health and medication issues potentially affected his ability to enter his guilty plea. Trejo, who had prior experience with clients who required mental health evaluations, testified that although he was aware DeLisle had mental health issues and argued for a sentence to accommodate these issues, DeLisle gave him no reason to doubt his capacity to understand the proceedings during his representation. Therefore, the superior court could have reasonably found that Trejo had no reason to investigate DeLisle's competency and his failure to do so does not amount to deficient performance. Accordingly, the superior court did not err in denying DeLisle's CrR 7.8 motion based on this ground.

We affirm the superior court's denial of DeLisle's ineffective assistance of counsel claim. But we reverse its denial of DeLisle's incompetency claim and remand for the superior court to

No. 46330-0-II

apply the correct legal standard, preponderance of the evidence, to the existing findings of fact on the incompetency claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, P.J.

LEE, J.