247 P.3d 775 (2011)
STATE of Washington, Appellant,
v.
Edward W. SMITH; Rick M. Neumayer; Jamie R.L. Husk; and Randolph M. Caul, Respondents.
Nos. 28769-6-III, 28771-8-III, 28772-6-III, 28773-4-III.
Court of Appeals of Washington, Division 3.
January 27, 2011.
Mark Erik Lindsey, Spokane County Prosecuting Attorneys, Spokane, WA, for Appellant.
Kristina M. Nichols, Attorney at Law, Spokane, WA, for Respondents.
*776 SWEENEY, J.
¶ 1 A sentence following a criminal conviction can be subsequently modified only for extraordinary circumstances that could not have been anticipated at the time of sentencing. Here, the sentencing court originally imposed a sentence that included "partial confinement." The defendants served or are serving a term of confinement and then became eligible or will become eligible for partial confinement. But the county subsequently eliminated all partial confinement programs because of budget reductions. The original sentencing judge concluded that this was an extraordinary circumstance and modified the sentences. We conclude that this was an appropriate exercise of discretion and we affirm the ruling.

FACTS
¶ 2 Edward W. Smith, Rick M. Neumayer, Jamie R.L. Husk, and Randolph M. Caul failed to comply with conditions of drug diversion programs. The sentencing court ordered that their participation in the drug treatment programs end. The court then sentenced each of them to nine months in jail for different drug-related offenses in 2009. The court also ordered that each could serve his sentence in partial confinement, like home detention, work crew, and work release.
¶ 3 Spokane County eliminated its partial confinement programs at Geiger Correctional facility as part of a cost cutting measure in late 2009 with the result that these defendants would have to serve out the remainder of their sentences in total confinement. They moved for relief from their sentences.
¶ 4 The court heard argument on the motions and concluded that it had discretion under relevant criminal procedure rules to grant relief in the form of a modification of the original judgments and sentences. The court's sentences were based on the partial confinement programs and it concluded that modifications were in order after the programs ended:
But clearly in my sentence [partial confinement] was part of the sentence. I contemplated each of these individuals at some point transitioning into a less restrictive environment. The whole idea behind these programs is to move someone from confinement, and move them into a less-structured environment, in effect integrate them back into the community in a successful way rather than just having someone sit in a jail cell for nine months, less good time, and then simply walking out the door.
That was a part and parcel of my sentence. And I contemplated that being part of the sentence.
What I didn't have before me at the time was the belief that these partial confinements would leave. I had no knowledge of that. Nor did I contemplate it. And if I did not have partial confinement available to me, if it had simply been straight confinement, I would have done something different with my sentences at that time.
Report of Proceedings (RP) at 18. The judge then sentenced the defendants to six months, the low end of the standard range. The shortened sentences effectively led to the release of the four defendants because of credit for time already served.
¶ 5 The State appeals.

DISCUSSION
¶ 6 The State contends that the Sentencing Reform Act of 1981(SRA), chapter 9.94A RCW, limits the sentencing court's authority and that statutory scheme provides no authority for the court to do what it did here. The State urges that our review is de novo. The defendants contend that CrR 7.8(b)(5) vests the sentencing court with discretionary authority to modify the sentences here in the interest of justice. And, they continue, the loss of the partial confinement part of their sentences is just the kind of extraordinary circumstance CrR 7.8(b)(5) addresses. And they urge that a level of deference to the trial judge's understanding of what is an extraordinary circumstance is appropriate when the standard of review is abuse of discretion.
¶ 7 The question, then, is whether the court had discretionary authority to change the sentences it imposed here because the *777 way in which those sentences would be served changed, from home detention or work release to actual incarceration. And the answer to that question turns on whether the circumstances here amount to "extraordinary circumstances [that] relate to fundamental, substantial irregularities in the court's proceedings or to irregularities extraneous to the court's action." State v. Olivera-Avila, 89 Wash.App. 313, 319, 949 P.2d 824 (1997). The State contends this is a question of law controlled by the SRA. The defendants contend it is a matter vested in the discretion of the sentencing judge by CrR 7.8 (relief from final judgments in criminal cases).
¶ 8 The State correctly points out that we review de novo whether a trial court exceeded its statutory authority under the SRA. State v. Murray, 118 Wash.App. 518, 521, 77 P.3d 1188 (2003). The original sentence (nine months) and the modified sentence (six months) here are within the standard range of the SRA. The State urges, nonetheless, that the SRA does not authorize this modification.
¶ 9 The SRA provides that a defendant may not be "released" prior to the expiration of his sentence: "No person serving a sentence imposed pursuant to this chapter and committed to the custody of the department shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows."RCW 9.94A.728. And while the net effect of the court's sentencing modification here may have been early release, that was not the intent or basis for the modification. The basis for the court's decision was to impose the sentence the judge would have imposed had he known of the subsequent termination of the partial confinement programs. The distinction here is not merely a technicality.
¶ 10 The SRA prohibits early release. But it does not, or at least does not appear to, prohibit the traditional discretion extended to a sentencing judge to correct a sentence based on unforeseen circumstances, here the unanticipated termination of the partial confinement programs. The end result of this decision was that these defendants were released early. But that was a by-product of the discretionary decision to revisit the sentences based on the end of the partial confinement programs.
¶ 11 We review a CrR 7.8(b) motion for abuse of discretion. In re Pers. Restraint of Cadwallader, 155 Wash.2d 867, 879-80, 123 P.3d 456 (2005). A trial court abuses its discretion when it exercises its discretion in a manifestly unreasonable manner, or when the exercise of discretion is based on untenable grounds or reasons. State v. Aguirre, 73 Wash.App. 682, 686, 871 P.2d 616 (1994).
¶ 12 The court has authority "[o]n motion and upon such terms as are just . . . [to] relieve a party from a final judgment" for "[a]ny other reason justifying relief from the operation of the judgment." CrR 7.8(b)(5). Relief under CrR 7.8(b)(5) is limited to extraordinary circumstances not covered by any other section of the rule. State v. Brand, 120 Wash.2d 365, 369, 842 P.2d 470 (1992); Olivera-Avila, 89 Wash.App. at 319, 949 P.2d 824; State v. Cortez, 73 Wash.App. 838, 841-42, 871 P.2d 660 (1994). Extraordinary circumstances include fundamental and substantial irregularities in the court's proceedings or irregularities extraneous to the court's action. Aguirre, 73 Wash.App. at 688, 871 P.2d 616. Final judgments should be vacated or altered only in those limited circumstances, "where the interests of justice most urgently require." State v. Shove, 113 Wash.2d 83, 88, 776 P.2d 132 (1989). CrR 7.8(b)(5) will not apply when the circumstances used to justify the relief existed at the time the judgment was entered. Cortez, 73 Wash.App. at 842, 871 P.2d 660.
¶ 13 Here, the irregularity is the county's elimination of the partial confinement programs. The programs existed at the time of original sentencing and ended prior to completion of those sentences. This is certainly a new and, we conclude, extraordinary circumstance. The trial court specified that the original sentences were contingent upon the partial confinement programs being available. RP at 18.
¶ 14 We considered the question of extraordinary circumstances in the context of CrR 7.8(b)(5) in Cortez, 73 Wash.App. 838, *778 871 P.2d 660. In Cortez, the defendant entered a guilty plea and signed a written plea form that told him he might be deported if he pleaded guilty. 73 Wash.App. at 839, 871 P.2d 660. He later moved to vacate his conviction and set aside his plea. Id. The trial court granted the motion, concluding that deportation was too harsh. Id. at 840, 871 P.2d 660. We concluded that there were no extraordinary circumstances and reinstated the judgment. Id. at 841, 871 P.2d 660. There, deportation was a consequence specifically provided for under federal law. Id. The important distinction here is that the conditions in Cortez were knowable at the time of sentencing. Here, they were not. And the result of the county's change in policy is that these defendants wound up with a sentence that the sentencing judge never intended.
¶ 15 The judge had known the defendants since drug court, and if he had realized that the partial confinement programs were going to be eliminated he would have imposed a six-month sentence:
And I am going to therefore indicate that had I known that at the time, had I been able to sentence with that knowledge, I would have imposed the low end of the range on each of these individuals. I knew them all in Drug Court. I know of no reason why I would have imposed more than a six-month sentence. And I am going to provide relief from the operation of the judgment and modify the judgments to reflect that.
RP at 20.
¶ 16 Here, we have a circumstance that was unforeseeable and unanticipated when these defendants were originally sentenced the loss of county funds for partial confinement programs. And the sentencing judge made clear that these alternatives to incarceration were an important part of the sentence he imposed. This is not a case where in retrospect the sentence appears to be improper. Shove, 113 Wash.2d at 88, 776 P.2d 132 ("Modification of a judgment is not appropriate merely because it appears, wholly in retrospect, that a different decision might have been preferable."). This is instead a situation in which a fundamental underpinning of the judge's sentencing decision was changed and the judge's sentencing objective was thereby undermined. He concluded that this was an irregularity extraneous to the court's action. Aguirre, 73 Wash. App. at 688, 871 P.2d 616. And we agree.
¶ 17 This is an extraordinary circumstance that could not have been envisioned and dealt with at the time of the original sentencing or, according to the sentencing court, it would have been. We conclude then that the sentencing court had authority to revisit the sentences here. We affirm.
WE CONCUR: KULIK, C.J., and BROWN, J.