# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>JAVIER GONZALEZ-GONZALEZ, a.k.a.<br>JAVIER GONZALEZ GONZALEZ<br><br>Petitioner. | No. 51438-9-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, A.C.J. — Javier Gonzalez-Gonzalez seeks relief from personal restraint imposed following his guilty plea convictions for second degree rape of a child and second degree child molestation. He argues that his defense attorney provided ineffective assistance of counsel by failing to (1) adequately investigate his case and the State's evidence against him, and (2) adequately communicate with him to allow him to make a knowing, intelligent, and informed decision about whether to plead guilty. Gonzalez-Gonzalez also asserts that the trial court's subsequent denial of an eight week continuance of his sentencing date so that counsel could be substituted is an extraordinary circumstance justifying relief from judgment. We deny Gonzalez-Gonzalez's petition.

FACTS

A.    GUILTY PLEA

Gonzalez-Gonzalez was originally charged with two counts of second degree rape of a child and four counts of second degree child molestation.  Gonzalez-Gonzalez retained counsel to defend against the charges.

The State provided Gonzalez-Gonzalez's counsel with 86 pages of discovery, which included police interviews with the victim and her sisters, statements from the victim's brother-in-law regarding incriminating statements Gonzalez-Gonzalez had made to him, a statement from the victim's mother that she once found Gonzalez-Gonzalez nude in bed with the victim, and statements from the victim's husband that the victim had disclosed the abuse several years earlier. Gonzalez-Gonzalez's counsel reviewed the 86 pages of discovery.

Gonzalez-Gonzalez eventually pleaded guilty to one count of second degree rape of a child and one count of second degree child molestation.  Gonzalez-Gonzalez's guilty plea was memorialized in a document entitled Statement of Defendant on Plea of Guilty to Sex Offense (Plea Statement).  The Plea Statement shows that Gonzalez-Gonzalez was specifically informed that the standard sentencing range for the second degree rape of a child charge was between 102 and 136 months and the standard sentencing range for the second degree child molestation charge was between 31 and 41 months.  The Plea Statement also stated that the judge did not have to follow anyone's sentencing recommendation.  In addition, the Plea Statement provided an

explanation of the special sex offender sentencing alternative (SSOSA),[1] which Gonzalez-Gonzalez specifically initialed.

The Plea Statement also included the following statement:

I am Javier Gonzalez-Gonzalez. Between 08/13/2002 and 08/12/2004, in Clark County, Washington:

(1) I had sexual intercourse with L.G.-M., who was at least twelve years old but was less than fourteen years old at the time of the sexual intercourse. I was not married or in a State registered domestic partnership with L.G.-M. Further, L.G.-M. was at least thirty-six months younger than me at that time. L.G.-M. is my biological daughter, and we resided in the same home at that time. I used such position of power and trust to facilitate this crime. This act was part of an ongoing pattern of sexual abuse of the same victim, and said victim was under 18 years of age.

(2) I had sexual contact with L.G.-M.; who was at least twelve years old but was less than fourteen years old at the time of the sexual contact. I was not married or in [a] State registered domestic partnership with L.G.-M. Further, L.G.-M. was at least thirty-six months younger than me at the time. L.G.M. is my biological daughter, and we resided in the same home at that time. I used such position of power and trust to facilitate this crime. This act was part of an ongoing pattern of sexual abuse of the same victim, and said victim was under 18 years of age.

Personal Restraint Petition (PRP) at 63 (Appendix D at 9).

In addition, the Plea Statement included Gonzalez-Gonzalez's assertion that "An interpreter had previously read to [Gonzalez-Gonzalez] the entire statement above and that [Gonzalez-Gonzalez] understood it in full." PRP at 64 (Appendix D at 10). And a certified court interpreter declared in the Plea Statement that he had interpreted the entire Plea Statement to Gonzalez-Gonzalez from English to Spanish. Gonzalez-Gonzalez's attorney also declared in the

---

[1] RCW 9.94A.670.

3

Plea Statement that he had discussed the Plea Statement with Gonzalez-Gonzalez and that he believed that Gonzalez-Gonzalez fully understood the Plea Statement.

During his plea colloquy with the trial court, Gonzalez-Gonzalez acknowledged that he understood the nature of the charges against him and the consequences he would face if he pleaded guilty. Gonzalez-Gonzalez also affirmatively answered that he understood that he would give up several constitutional rights by entering a guilty plea, including the right to remain silent, the presumption of innocence, the right to question witnesses who testify against him, the right to bring forth witnesses on his behalf, and the right to an appeal. The trial court then engaged in the following colloquy:

> [The Court:] Knowing all these rights are being waived and the consequences you face, do you still wish to plead guilty to both [of] these charges?
>
> Defendant: Yes.
>
> The Court: Okay. Are you making this plea of guilty freely and voluntarily?
>
> Defendant: Yes.
>
> The Court: Has anyone made any threats against you or any promises to you to force you to plead guilty?
>
> Defendant: No.

PRP at 226 (Verbatim Report of Proceedings (VRP) (Aug. 1, 2014) at 10).

The trial court also reviewed Gonzalez-Gonzalez's above discussed statement regarding the facts of his conduct in the Plea Statement. Gonzalez-Gonzalez affirmed that his statement was true and that he had signed the written Plea Statement. The trial court accepted Gonzalez-Gonzalez's guilty plea, finding that it was knowingly, intelligently, and voluntarily made.

B.    MOTION FOR SUBSTITUTE COUNSEL AND SENTENCING

After the entry of his guilty plea, but prior to sentencing, Gonzalez-Gonzalez filed a pro se motion asking to discharge his trial counsel and substitute another attorney, Nicole T. Dalton, to represent him.[2]   Gonzalez-Gonzalez filed a declaration in support of his motion in which he claimed that his trial counsel had "rarely used a certified interpreter to communicate with [him] outside of court, other than to read through some papers."   PRP at 106 (Appendix G at 2). Gonzalez-Gonzalez also asserted that he did not "believe" that the plea offer was read to him and claimed that he did not understand the full implications or consequences of the plea agreement. PRP at 106 (Appendix G at 2).  Gonzalez-Gonzalez did not identify any specific consequences or implications of his guilty plea that he allegedly did not understand.  Gonzalez-Gonzalez also asked for an eight week continuance of his sentencing date in order to allow Dalton time to review his case.    The trial court addressed Gonzalez-Gonzalez's motion at a hearing in which Dalton and his trial counsel were present.  Dalton informed the court that she was not prepared to enter a notice of appearance in the case unless the trial court granted a "significant continuance" so that she could "come up to speed" on the case.  PRP at 249 (VRP (Dec. 23, 2014) at 33).

The trial court granted a four week continuance.  Dalton informed the court that four weeks was not enough time for her to fully investigate the case, and she did not substitute as counsel at that time.  The trial court informed Gonzalez-Gonzalez that the court would consider a motion to

---

[2]  Gonzalez-Gonzalez drafted his pro se motion with the help of Dalton and a certified Spanish court interpreter.

change his plea if there was a motion filed prior to the sentencing date. There is no record that such a motion was filed.

Gonzalez-Gonzalez proceeded to sentencing with his previously retained trial counsel. The trial court sentenced Gonzalez-Gonzalez to a term of confinement of 136 months on the second degree rape of a child conviction and a concurrent term of 41 months on the second degree child molestation conviction, resulting in a total confinement term of 136 months.

C.      MOTION TO WITHDRAW GUILTY PLEA

Within one year after entry of his judgment and sentence, Gonzalez-Gonzalez retained Dalton as counsel and filed a motion to withdraw his guilty plea and vacate his judgment and sentence pursuant to CrR 7.8.[3] The sole support for this motion was the attached declarations of Dalton and Jose DeLeon, a hired defense investigator who reviewed the State's case and assessed whether Gonzalez-Gonzalez's trial counsel had conducted adequate investigation.

In her declaration, Dalton asserted that Gonzalez-Gonzalez's trial counsel failed to obtain the services of a professional investigator, failed to transcribe the video recording of the victim interview, and inappropriately used leading questions in his interview of the victim. Dalton concluded, based on her review of the recorded interview of the victim, that trial counsel had rendered "an ineffective approach that falls short of appropriate investigative technique." PRP at 157 (Declaration of Dalton at page 2).

---

[3] CrR 7.8 provides several bases upon which a trial court may relieve a party from final judgment. Gonzalez-Gonzalez's motion was based on CrR 7.8(b)(5), which provides relief for "[a]ny other reason justifying relief from the operation of the judgment."

In his declaration, DeLeon asserted several times that Gonzalez-Gonzalez had "indicated generally" that he did not understand much of what his prior attorney said to him. PRP at 207 (Declaration of DeLeon at 3). DeLeon also claimed that Gonzalez-Gonzalez had "indicate[d]" that his trial counsel had failed to explain what legal terms meant or the possible implications of entering into a plea agreement. PRP at 208 (Declaration of DeLeon at page 4).

DeLeon also asserted that trial counsel had failed to interview various witnesses that Gonzalez-Gonzalez had mentioned would be able to testify on his behalf. DeLeon interviewed these witnesses and summarized the information he learned from them in his declaration. DeLeon claimed that some witnesses could have testified that Gonzalez-Gonzalez was not living in Vancouver, Washington during the time of the alleged offenses. Other witnesses would have testified to a possible blackmail attempt by Gonzalez-Gonzalez's former wife. One witness was willing to testify that the child victim "would not have put herself in [a] situation to be molested." PRP at 213 (Declaration of DeLeon at 9). None of the potential witnesses referenced in DeLeon's declaration provided a supporting declaration.

DeLeon also criticized trial counsel for solely interviewing the child victim, rather than all of the State's witnesses. He further criticized trial counsel's method of interviewing the victim. DeLeon concluded that the prior investigation in Gonzalez-Gonzalez's case was inadequate and opined that had trial counsel conducted a thorough investigation, Gonzalez-Gonzalez would have been provided "important additional facts to aid in his defense," and that his trial counsel would have had "more tools to work with" during the plea bargaining process. Declaration of DeLeon at page 10.

The prosecutor assigned to respond to Gonzalez-Gonzalez's CrR 7.8 motion submitted a responsive declaration detailing his interview with Gonzalez-Gonzalez's trial counsel. Gonzalez-Gonzalez's trial counsel had reviewed the State's discovery, met with Gonzalez-Gonzalez between 10 and 15 times, spent two days reviewing the plea agreement with him with the aid of an interpreter, and interviewed the child victim. Counsel explained that he solely interviewed the child victim because he feared that conducting any further interviews of the State's witnesses would result in the State rescinding its plea offer of reducing multiple counts of rape of a child and child molestation to only one count on each crime. Trial counsel also spoke with several of Gonzalez-Gonzalez's family members, but they were not present during any of the alleged incidents.

The trial court determined that Gonzalez-Gonzalez's motion to withdraw plea was not time barred, but that Gonzalez-Gonzalez had not made a substantial showing that he was entitled to relief or that an evidentiary hearing was necessary to resolve his motion on the merits. Accordingly, the trial court transferred Gonzalez-Gonzalez's motion to this court as a personal restraint petition (PRP) in accordance with CrR 7.8(c)(2).[4]

---

[4] Under CrR 7.8(c)(2),

> The court shall transfer a motion filed by a defendant to the Court of Appeals for consideration as a personal restraint petition unless the court determines that the motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that he or she is entitled to relief or (ii) resolution of the motion will require a factual hearing.

ANALYSIS

A.     LEGAL PRINCIPLES

"Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132-33, 267 P.3d 324 (2011) (citing *In re Cook*, 114 Wn.2d 802, 810-12, 792 P.2d 506 (1990)).  To be entitled to relief on a PRP, a petitioner must show (1) actual and substantial prejudice by a constitutional error, or (2) "a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013).

In reviewing a PRP, we have three available options: (1) deny the petition, (2) grant the petition, or (3) transfer the petition to the superior court for a reference hearing.  *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013); *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015).  A reference hearing is appropriate where the petitioner makes the required prima facie showing, but we are unable to determine the merits of the petition solely on the record. *Yates*, 177 Wn.2d at 18.

In order to establish a prima facie showing that a reference hearing is warranted, a petitioner must present "'the facts underlying the claim of unlawful restraint and the evidence available to support the factual allegations.'" *Id.* (quoting *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992)).  "Bald assertions and conclusory allegations" are inadequate to justify a reference hearing. *Rice*, 118 Wn.2d at 886.  If the petitioner's allegations are based on matters outside of the existing record, he must show that he

has competent, admissible evidence to support such allegations. *Id.* If the evidence is based on knowledge that is in the possession of others, the petitioner must present affidavits of those witnesses or else other corroborative evidence. *Id.* Factual allegations must be based on more than speculation, conjecture, or inadmissible hearsay. *Id.*

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Gonzalez-Gonzalez argues that he was provided ineffective assistance of counsel because his trial counsel failed to (1) conduct an adequate investigation of witnesses and (2) communicate with Gonzalez-Gonzalez in a language he could understand. We disagree.

1.      Legal Principles

Ineffective assistance of counsel is a constitutional error, rooted in the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). To obtain collateral relief in a PRP raising an ineffective assistance of counsel claim, the petitioner must show that (1) defense counsel's representation was deficient and (2) counsel's deficient representation prejudiced the defense. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 846-47, 280 P.3d 1102 (2012) (holding that a petitioner who meets the prejudice standard under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) necessarily meets the burden of proving actual and substantial for purposes of collateral relief).

Counsel's performance is deficient if it "falls 'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). We engage in a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856,

862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

To establish prejudice in the plea process, a petitioner must show a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 254, 172 P.3d 335 (2007). A bare assertion that the petitioner would not have pleaded guilty had he known all of the consequences of entering a plea is insufficient to establish prejudice. *Id.*

2.    Failure to Conduct Adequate Investigation

Gonzalez-Gonzalez argues that his trial counsel failed to conduct adequate investigation into his case and the State's evidence against him. Specifically, Gonzalez-Gonzalez contends that his attorney should have interviewed other State witnesses aside from the victim and investigated the potential defense witnesses that Gonzalez-Gonzalez had suggested to counsel.

"Effective assistance of counsel includes assisting the defendant in making an informed decision as to whether to plead guilty or to proceed to trial." *State v. A.N.J.*, 168 Wn.2d 91, 111-12, 225 P.3d 956 (2010). Counsel has a duty to conduct reasonable investigation guided by prevailing professional norms. *Elmore*, 162 Wn.2d at 252. However, "[t]he degree and extent of investigation required will vary depending upon the issues and facts of each case." *A.N.J.*, 168 Wn.2d at 111. "In any ineffectiveness claim, a particular decision not to investigate must be directly assessed for reasonableness, giving great deference to counsel's judgments." *Elmore*, 162

Wn.2d at 252. And we evaluate a claim of ineffective assistance based on a duty to investigate in light of the strength of the State's case. *Id.* at 253.

> a. Interviewing State's witnesses

Gonzalez-Gonzalez claims that his trial counsel rendered deficient performance by only interviewing the child victim, rather than all of the State's witnesses. Relying on *A.N.J.*, Gonzalez-Gonzalez argues counsel's limited investigation prevented him from making an informed decision as to whether to accept the guilty plea or proceed to trial.

In *A.N.J.*, our Supreme Court held that counsel's performance fell below an objective standard of reasonableness where counsel conducted little investigation or research into the case, made no discovery requests, filed no motions, and had spent approximately 5 to 10 minutes discussing the plea offer with his juvenile client prior to entry of the plea. 168 Wn.2d at 100-01. However, unlike in *A.N.J.*, this is not a case where counsel failed to conduct little to no investigation. Gonzalez-Gonzalez's trial counsel met with Gonzalez-Gonzalez between 10 and 15 times; spent two days reviewing the Plea Statement with him with the aid of an interpreter; and interviewed the child victim. Trial counsel also spoke with several of Gonzalez-Gonzalez's family members, but they were not present during any of the alleged incidents. Gonzalez-Gonzalez's trial counsel further explained that he did not schedule other in person interviews with State witnesses out of fear that the State would rescind its plea offer. Thus, Gonzalez-Gonzalez fails to show no conceivable legitimate tactic explaining why trial counsel only interviewed the child victim in his case. He, therefore, fails to show counsel's performance fell below an objective standard of reasonableness.

Gonzalez-Gonzalez also fails to establish prejudice based on his trial counsel's failure to conduct in person interviews of the other State witnesses. Gonzalez-Gonzalez claims that the general lack of investigation in his case denied him the ability to make an informed decision about whether to plead guilty. However, Gonzalez-Gonzalez makes no effort to explain what information would have been revealed upon further investigation of the State's witnesses or how this information would have influenced his decision to accept a guilty plea. Therefore, he fails to show a reasonable probability that, but for his attorney's failure to interview the other State witnesses, he would not have pleaded guilty and would have insisted on going to trial. Because Gonzalez-Gonzalez fails to show either deficient performance or prejudice, his ineffective assistance of counsel claim on this basis fails.

b. Interviewing defense witnesses

Gonzalez-Gonzalez also claims that trial counsel was ineffective in failing to investigate his suggested defense witnesses. Gonzalez-Gonzalez claims that he had provided counsel with the names of several defense witnesses who could have testified "in relation to the time frame of events." PRP at 172 (Motion to Withdraw Plea and Vacate Judgment and Sentence CrR 7.8 and Supporting Memorandum of Law (Motion to Withdraw Plea) at 37). Presumably, Gonzalez-Gonzalez refers to the summarized witness interviews contained in DeLeon's report. However, DeLeon's affidavit summarizing his interviews with potential defense witnesses is insufficient. *See Rice*, 118 Wn.2d at 886 ("If the petitioner's evidence is based on knowledge in the possession of others, he may not simply state what he thinks those others would say, but must present their affidavits or other corroborative evidence.").

Further, even if the potential witnesses referenced by DeLeon could have testified to the information in DeLeon's declaration, Gonzalez-Gonzalez cannot show prejudice. Gonzalez-Gonzalez informed trial counsel of these "helpful defense witnesses." PRP at 172 (Motion to Withdraw Plea at 37). Thus, he already knew the information that they could provide and he fails to show a reasonable probability that he would not have pleaded guilty had his counsel investigated these witnesses and confirmed information that Gonzalez-Gonzalez already knew. Gonzalez-Gonzalez's ineffective assistance of counsel claim on this basis fails.

3.      Failure to Adequately Communicate with Gonzalez-Gonzalez

Next, Gonzalez-Gonzalez argues that his trial counsel failed to communicate with him in a language that he could understand. We are not persuaded by this argument.

The record shows that trial counsel spent two days reviewing the Plea Statement with Gonzalez- Gonzalez with the aid of an interpreter. And the court certified interpreter signed a declaration stating that he had interpreted the entire Plea Statement for Gonzalez-Gonzalez from English to Spanish. Also, Gonzalez-Gonzalez asserted in the Plea Statement that an interpreter had read the entire Plea Statement to him and that he "understood it in full." PRP at 64 (Appendix D at 10).Accordingly, we are not persuaded by Gonzalez-Gonzalez's argument that his trial counsel failed to communicate the plea in a language that he could understand.[5]

---

[5] Gonzalez-Gonzalez also cites to a number of federal cases, guidance from the California State Bar's Standing Committee on Professional Responsibility, a Utah State Bar Ethics Advisory Opinion, and a formal opinion from the Association of the Bar of the City of New York Committee on Professional and Judicial Ethics to argue that his attorney should have more properly assessed his own Spanish speaking skills. None of these authorities are binding on this court. They are also irrelevant given that Gonzalez-Gonzalez's attorney did not rely on his own mastery of the Spanish language to review the plea agreement with Gonzalez-Gonzalez. Counsel used a court

14

Gonzalez-Gonzalez further argues that his uncontroverted testimony establishes a prima facie showing that his trouble communicating with counsel rendered his guilty plea not knowing, intelligent, and voluntary. Specifically, Gonzalez-Gonzalez refers to his conversation with DeLeon in which he "indicated generally" that he did not understand much of what his trial counsel said to him and his declaration in support of his motion to substitute counsel in which he claimed that he did not understand the full implications or consequences of the plea agreement. PRP at 207 (Declaration of DeLeon at 3). We again are not persuaded by Gonzalez-Gonzalez's argument.

A petitioner seeking to withdraw a guilty plea "must present some evidence of involuntariness beyond his self-serving allegations." *In re Det. of Scott*, 150 Wn. App. 414, 427, 208 P.3d 1211, *review denied*, 167 Wn.2d 1014 (2009); *see also State v. Osborne*, 102 Wn.2d 87, 97, 684 P.2d 683 (1984) (holding that a defendant seeking to withdraw guilty plea must present some evidence of involuntariness other than his bare, self-serving allegations). "[A] defendant's signature on a plea statement is strong evidence of a plea's voluntariness." *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). The trial court's on-record inquiry of a defendant who signs a plea statement further strengthens the inference of voluntariness. *Scott*, 150 Wn. App. at 427.

Here, Gonzalez-Gonzalez's trial counsel and a certified court interpreter declared that they had reviewed the Plea Statement in full with Gonzalez-Gonzalez. And Gonzalez-Gonzalez himself asserted that an interpreter read the entire Plea Statement to him and that he "understood it in full."

---

certified Spanish interpreter to review the plea agreement. Gonzalez-Gonzalez acknowledges in his petition that his attorney never claimed to have translated any of the forms in his case.

PRP at 64 (Appendix D at 10). Gonzalez-Gonzalez also signed the Plea Statement, admitting to the facts underlying the charges against him. During his plea colloquy with the trial court, Gonzalez-Gonzalez affirmed that this statement was true and that he understood the nature of the charges against him, the consequences he faced, and the constitutional rights he would surrender by pleading guilty. He affirmatively answered that his plea was made freely and voluntarily and that no one had made any promises to force him to plead guilty. Gonzalez-Gonzalez's subsequent claim that he generally did not understand much of what his attorney said to him throughout the plea process is insufficient to overcome the strong evidence here that his plea was made knowingly, voluntarily, and intelligently. And his bare assertions that he would not have pleaded guilty had he known all of the consequences of entering a plea is insufficient to establish prejudice. *See Elmore*, 162 Wn.2d at 254.

Nonetheless, Gonzalez-Gonzalez contends that a fact finding hearing is warranted because he has stated with particularity facts which, if proven, would entitle him to relief. However, Gonzalez-Gonzalez's sole support for his PRP is Dalton's and DeLeon's declarations, which merely summarize testimony that potential witnesses could offer on his behalf. Gonzalez-Gonzalez fails to provide the affidavits of those witnesses or any other corroborative evidence. Because Gonzalez-Gonzalez's factual allegations must be based on more than speculation, conjecture, or inadmissible hearsay, this is inadequate to justify ordering a reference hearing.

Gonzalez-Gonzalez also argues that his plea colloquy with the trial court was insufficient. The only Washington cases he cites to for support involve failure to warn defendants of immigration consequences of a guilty plea. However, Gonzalez-Gonzalez does not claim he was

16

never advised of potential immigration consequences of entering a guilty plea. He also relies on federal and out of state cases to argue that a plea colloquy that elicits yes or no responses is insufficient to show that a plea was made knowingly, voluntarily, and intelligently.[6] However, as explained above, our Supreme Court has held that "[A] defendant's signature on a plea statement is strong evidence of a plea's voluntariness." *Branch*, 129 Wn.2d at 642. And the only evidence Gonzalez-Gonzalez offers to rebut this presumption is his bare assertions that he generally did not understand what counsel said to him, which is insufficient to establish prejudice. *See Elmore*, 162 Wn.2d at 254.

Gonzalez-Gonzalez also argues that his trial counsel's failure to communicate in a language he could understand amounted to coercion. This argument fails because, as explained above, trial counsel reviewed the Plea Statement with Gonzalez-Gonzalez with the aid of an interpreter in a language Gonzalez-Gonzalez could understand.

C.      DENIAL OF AN EIGHT WEEK CONTINUANCE TO ALLOW SUBSTITUTION OF COUNSEL

---

[6] Gonzalez-Gonzalez primarily relies on *Miles v. Stainer*, 108 F.3d 1109, 1112-13 (9th Cir. 1997) to argue that monosyllabic responses at a plea colloquy is insufficient to overcome serious doubts about his mental abilities and his understanding of conversations with counsel outside of court. However, *Miles* is readily distinguishable. There, the defendant had lost and regained competency several times prior to pleading guilty. *Id.* at 1112. And the defendant's doctors specifically warned that the defendant's competence depended on medication that he routinely refused to take. *Id.* Under these circumstances, the *Miles* court held that a plea colloquy consisting of monosyllabic responses was insufficient to assess the defendant's complex reasoning and that it was incumbent upon the trial court to inquire as to whether the defendant had taken his medication before accepting his guilty plea. *Id.*

Here, Gonzalez-Gonzalez references his "mental abilities" in his petition. PRP at 188 (Motion to Withdraw Plea at 53). However, nothing in the record shows that Gonzalez-Gonzalez was not competent at the time he pled guilty.

Finally, Gonzalez-Gonzalez claims that the trial court's denial of an eight week continuance of his sentencing date is an "'extraordinary circumstance[]'" justifying withdrawal of his guilty plea under CrR 7.8(b)(5). PRP at 195 (quoting *State v. Olivera-Avila*, 89 Wn. App. 313, 319, 949 P.2d 854 (1992)). This claim is without merit.

As an initial matter, Gonzalez-Gonzalez appears to argue that the trial court denied his request to substitute counsel. This is untrue. The trial court never ruled that Gonzalez-Gonzalez could not substitute Dalton as counsel. Rather, it denied his request for an eight week continuance to allow Dalton to review his case. And the trial court granted a four week continuance of Gonzalez-Gonzalez's sentencing date to allow Dalton time to prepare. The trial court also stated that it would consider any motion that Gonzalez-Gonzalez filed before the sentencing date.

Under CrR 7.8(b)(5), the court has authority relieve a party from final judgment for "[a]ny other reason justifying relief from the operation of the judgment." Relief under CrR 7.8(b)(5) is confined to extraordinary circumstances that are not covered by the other sections of the rule. *State v. Smith*, 159 Wn. App. 694, 700, 247 P.3d 775 (2011). "Extraordinary circumstances include fundamental and substantial irregularities in the court's proceedings or irregularities extraneous to the court's action." *Id.* A final judgment should only be vacated in those limited circumstances "'where the interests of justice most urgently require.'" *Id.* (quoting *State v. Shove*, 113 Wn.2d 83, 88, 776 P.2d 132 (1989)).

The interests of justice do not urgently require us to vacate Gonzalez-Gonzalez's judgment and sentence and allow him to withdraw his guilty plea. The trial court's denial of an eight week continuance after Gonzalez-Gonzalez had pled guilty was not a fundamental and substantial

irregularity in the court's proceedings. The request for an eight week continuance of the sentencing date was made 144 days after Gonzalez-Gonzalez's guilty plea. Thus, the trial court's refusal to continue the sentencing date did not influence Gonzalez-Gonzalez's decision to enter a guilty plea because he had already pled guilty. And the denial of a continuance of the sentencing date does not show that Gonzalez-Gonzalez's guilty plea was not made knowingly, intelligently, and voluntarily. We reject Gonzalez-Gonzalez's claim that the trial court's denial of an eight week continuance after he pleaded guilty is an extraordinary circumstance allowing him to withdraw his guilty plea.

We deny Gonzalez-Gonzalez's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, A.C.J.

I concur:

Worswick, J.

Glasgow, J.