IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37588-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| HUGH ALLEN PUTNAM, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Hugh Putnam, pursuant to CrR 7.8(b)(b), seeks early release from

confinement at the Department of Corrections' (DOC) Coyote Ridge Corrections Center.

Putnam emphasizes his age and medical condition as a basis for release. Although we

sympathize with Putnam's circumstances, we agree with the superior court that the

judicial branch lacks authority to grant early release. Putnam's request for relief must be

addressed to the executive branch. We affirm the superior court's denial of Putnam's

motion.

FACTS

Appellant Hugh Putnam was born August 2, 1956. Putnam underwent an ostomy

surgery to control ulcerative colitis in 1976 at the age of 19. The surgery resulted in a

stoma, an opening on the abdomen connected to Putnam's digestive system to allow waste to exit the body. The opening requires constant medical attention.

On January 14, 2003, the State of Washington charged Hugh Putnam, then age 46, with two counts of attempted murder while armed with a firearm for firing his gun at two boys at a Wenatchee park. The State also charged Putnam with four counts of first degree assault with a firearm, because Putnam also fired a gun in the direction of a couple visiting the park.

In 2003, a Chelan County jury found Hugh Putnam guilty of two counts of first degree assault and two counts of second degree assault. The jury returned special verdicts for each of the convictions finding that Putnam was armed with a firearm for each count.

The trial court sentenced Putnam to 414 months. In 2004, this court affirmed the convictions in an unpublished opinion. This court has since denied two personal restraint petitions filed by Putnam.

In addition to suffering from ulcerative colitis and maintaining a stoma, Putnam now suffers from type-1 diabetes, mediastinal adenopathy, high blood pressure, and chronic obstructive pulmonary disease. In 2009, he suffered a stroke.

On November 20, 2019, then age 63, Hugh Putnam filed a clemency petition in which he requested that the Washington State Clemency and Pardons Board commute his sentence and permit him to live the rest of his sentence at home where he could care for

his own medical needs. In the petition, Putnam emphasized his age and medical conditions. Months later the COVID-19 pandemic struck Washington State, the United States, and the world.

PROCEDURE

On April 16, 2020, Hugh Putnam, still 63 years old, filed, with the superior court, an emergency motion for early release from Coyote Ridge Corrections Center pending the outcome of his clemency petition before the Clemency and Pardons Board. In the motion, he emphasized his medical conditions. Putnam contended that, because of the coronavirus pandemic, he faces a grave risk of death because of those health conditions and his age. He alleged a violation of his right to equal protection and rights shielding him from cruel and unusual punishment. Putnam mentioned that the Clemency and Pardons Board would conduct a hearing in the fall of 2020. He asked, however, that the superior court grant him release pending his clemency hearing or a medical furlough until an effective vaccine is developed for COVID-19.

In response to Hugh Putnam's motion for release, the State of Washington responded that Hugh Putnam cited no law that authorized the superior court to entertain his motion for early release based on medical grounds. The State argued that the only court rule allowing relief from a criminal judgment and sentence, CrR 7.8, did not authorize granting of Putnam's motion. The State contended that, after entry of a judgment and sentence, the sentencing court's jurisdiction over the offender ends. The

3

State also challenged the merits of Putnam's request for release. After the State's response to his motion, Hugh Putnam cited CrR 7.8(b)(2), which addresses newly discovered evidence, and CrR 7.8(b)(5), which mentions any other reasons justifying relief, as the authority under which the trial court could grant him early release.

On May 1, 2020, the superior court conducted a hearing on Hugh Putnam's motion for early release. The trial court questioned whether it held authority to change a sentence entered eighteen years earlier. Defense counsel argued that CrR 7.8 bestowed such authority on the superior court. Defense counsel also informed the court that DOC was currently considering the potential of an extraordinary medical placement for Putnam. Otherwise, because of the violent nature of Putnam's offense, he did not qualify for any other early release programs adopted by DOC for the pandemic. Defense counsel informed the court that three staff members at Coyote Ridge Corrections Center recently tested positive for COVID-19.

During the motion hearing, the State challenged application of the newly discovered evidence rule, CrR 7.8(b)(2), because the rule applied to evidence related to the conviction not to pandemics occurring during administration of the sentence. According to the State, only evidence impacting the guilt or innocence of the offender qualified as newly discovered evidence under the rule's subsection. The State also argued that CrR 7.8(b)(5) was not so broad as to grant the court jurisdiction of a request

for early release. Instead, according to the State, CrR 7.8(b)(5) only applied to errors or defects in the trial or sentencing process.

The superior court agreed with the State and denied Hugh Putnam's motion for early release because the clemency board, not the court, possessed the authority to grant the release. The superior court also reasoned that CrR 7.8(b)(5) does not apply because COVID-19 and Putnam's state of health are not "'any other reason justifying relief from the judgment.'" Clerk's Papers at 403.

## LAW AND ANALYSIS

On appeal, Hugh Putnam, now age 64, and amici curiae sketch, in their respective briefs, the danger of the COVID-19 pandemic and its impact on inmates nationally, in Washington State, and Coyote Ridge Detention Center, Putnam's locus of incarceration. The literature presented emphasizes the danger to older inmates and those with preexisting ailments. We readily agree with the literature presented by Putnam and amici and assume the danger from the pandemic continues despite the development of vaccinations. Nevertheless, we conclude that the judicial branch lacks authority to release one on medical or epidemiology grounds. One Washington statute removes from the sentencing court the ability to grant community custody or early release for an offender. No court rule grants such authority. Putnam must present his cause to the executive branch of Washington State government.

RCW 9.94A.728 controls Hugh Putnam's appeal.  The statute declares, in part:

> (1) No person serving a sentence imposed pursuant to this chapter and committed to the custody of the department [of corrections] shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:
> . . . .
> (c)(i) The secretary may authorize an extraordinary medical placement for an offender when all of the following conditions exist:
> (A) The offender has a medical condition that is serious and is expected to require costly care or treatment;
> (B) The offender poses a low risk to the community because he or she is currently physically incapacitated due to age or the medical condition or is expected to be so at the time of release; and
> (C) It is expected that granting the extraordinary medical placement will result in a cost savings to the state.

Note that the statute only authorizes the secretary of DOC to grant a medical release.

On April 15, 2020, as a result of the pandemic and based on his emergency powers, Washington Governor Jay Inslee allowed for the early release of offenders who did not commit a violent offense.  Proclamation by Governor Jay Inslee, No. 20-50 (Wash. Apr. 15, 2020), https://www.governor.wa.gov/sites/default/files/proclamations/20-50%20-%20COVID-19%20Reducing%20Prison%20Population.pdf, related to the COVID-19 State of Emergency.  Putnam committed a violent offense.

Before the superior court, Hugh Putnam, despite RCW 9.94A.728, argued that CrR 7.8(b) (2) and (5) authorized the superior court to grant him early release due to the combination of COVID-19, his age, and his medical conditions.  This rule declares in pertinent part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.  On motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons:

. . . .

(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.5;

. . . .

(5) Any other reason justifying relief from the operation of the judgment.

(Boldface omitted.)  On appeal, Putnam advances only subsection (5).  He contends that trial courts retain the power to revisit sentences imposed on medically vulnerable individuals due to the unforeseen circumstance of a worldwide pandemic.  The State responds that a trial court may grant relief under subsection (5) only when a judgment is invalid or the imposed sentence may not be executed as conceived by the court.  We agree with the State.

On entry of a final judgment and sentence of imprisonment for longer than one year, legal authority over the accused passes by operation of law to DOC and the Washington State Clemency and Pardons Board, and those agencies of the executive branch bear full responsibility for executing the judgment and sentence or granting parole pursuant to statutes.  *State v. Hale*, 94 Wn. App. 46, 54, 971 P.3d 88 (1999); *January v. Porter*, 75 Wn.2d 768, 773-74, 453 P.2d 876 (1969).  The Washington State Supreme Court has emphasized this transfer of jurisdiction.  Under Washington's system of punishment, the judicial process does not extend to the granting or denial of parole.

*January v. Porter*, 75 Wn.2d 768, 773. The judiciary's functions ends with either a verdict of acquittal or the final entry of a judgment and sentence. *January v. Porter*, 75 Wn.2d at 773. The courts have long recognized this division of power. *January v. Porter*, 75 Wn.2d at 774.

Notwithstanding this transfer of jurisdiction from the judicial to the executive branch, final judgments in both criminal and civil cases may be vacated or altered by the sentencing court in those limited circumstances when the interests of justice most urgently require. *State v. Shove*, 113 Wn.2d 83, 88, 776 P.2d 132 (1989) (citing RCW 9.94A.150, RCW 9.94A.260, CrR 7.8(b), CR 60(b)). Nevertheless, relief under CrR 7.8(b)(5) is limited to extraordinary circumstances not covered by any other section of the CrR 7.8. *State v. Smith*, 159 Wn. App. 694, 700, 247 P.3d 775 (2011). An extraordinary circumstance includes "fundamental and substantial irregularities in the court's proceedings or irregularities extraneous to the court's action." *State v. Smith*, 159 Wn. App. at 700.

The limited number of decisions in which a Washington court has granted relief under CrR 7.8(b)(5) involve either a defect with the judgment and sentence or an inconsistency or inability for the sentence to be served as conceived by the sentencing court. *State v. Klump*, 80 Wn. App. 391, 909 P.2d 317 (1996); *State v. Smith*, 159 Wn. App. 694, 247 P.3d 775 (2011). In *State v. Klump*, the superior court imposed a valid sentence on Ronald Max Klump, which sentence referred to a previously imposed federal

8

sentence. The federal sentence was later reversed. Klump sought relief under

CrR 7.8(b)(5) from his state sentence, and this court granted the relief because the federal

sentence, to which the state sentence referred, was later invalidated. The state sentence

therefore became invalid on its face.

In *State v. Smith*, 159 Wn. App. 694 (2011), the sentencing court sentenced four

offenders to nine months' of partial confinement. The county of incarceration then

eliminated its partial confinement program due to budget restraints. The original

sentencing judge concluded that this change in confinement policy constituted an

extraordinary circumstance under CrR 7.8(b)(5). On resentencing, the court shortened

the sentences to six months, which shortening led to the immediate release of the

offenders. This court affirmed because of the unforeseeable circumstance of loss of

county funds for partial confinement at the time of the initial sentencing. The sentencing

judge emphasized that the alternatives to incarceration served an important role in the

sentences he imposed. This court observed that the availability of partial confinement

served as a fundamental underpinning of the judge's sentencing decision and the change

in county policy undermined the sentencing court's objective.

In *State v. Smith*, this court, in dicta, mentioned that the Sentencing Reform Act of

1981 (SRA), ch. 9.94A RCW, did not permit the judicial branch to release an offender

before the expiration of his or her sentence pursuant to RCW 9.94A.728. This court

wrote that, while the effect of the four offenders' resentencing by the superior court

9

included early release, such result constituted an indirect impact of the resentencing and did not serve as the resentencing court's basis for the modification. Instead, the resentencing court imposed a sentence that the court would have initially imposed had the court known of the subsequent termination of the partial confinement programs. This court reasoned that, although the SRA prohibits early release by the judicial branch, that prohibition did not prevent a judge from correcting a sentence based on unforeseen circumstances.

Hugh Putnam contends that CrR 7.8(b)(5) does not limit relief to a defect in the underlying conviction or sentence, nor is the rule limited to a sentence that cannot be executed as conceived. Instead, the resentencing court may, according to Putnam, grant relief on extraordinary circumstances extraneous to the court's action that did not exist at the time of entry of the judgment and sentence. Putnam relies on *State v. Cortez*, 73 Wn. App. 838, 871 P.2d 660 (1994).

In *State v. Cortez*, the trial court granted Jose Cortez's motion to vacate his judgment and sentence for possession of a controlled substance. At the time Cortez filed the motion, he faced deportation proceedings and could not gain relief from deportation due to his conviction. On appeal, the State argued that the trial court erred in granting the motion because relief under CrR 7.8(b)(5) was limited to a legal defect relating to the underlying conviction. The State contended that no legal defect existed, and, therefore, relief from the operation of the judgment could not be granted. This court agreed that no

legal defect existed but clarified that, even had one existed, it would constitute an "irregularity" or "mistake" within the meaning of CrR 7.8(b)(1) rather than an "extraordinary circumstance" under CrR 7.8(b)(5). *State v. Cortez*, 73 Wn. App. at 841. This court then addressed CrR 7.8(b)(5) and ruled that no alleged extraordinary circumstances existed because the circumstances on which Cortez sought vacation, the potential for deportation, existed at the time of the sentencing.

Hugh Putnam emphasizes *State v. Cortez*'s mention of conditions existing at the time of sentencing and then highlights that his sentencing court never expected or considered the circumstances of a pandemic wreaking havoc in the prison system and threating the life of one of Putnam's age and medical condition. Nevertheless, Putnam fails to show an exceptional circumstance that undermines his specific sentence and judgment as opposed to extraordinary circumstances that impact Washington's administration of justice and punishment system as a whole. All offenders under DOC incarceration face threats due to the coronavirus and some of the offenders are as old as Putnam and have medical conditions that render them susceptible to the pandemic.

In *State v. Klump*, the sentence could not be completed because of its invalidity. In *State v. Smith*, the sentence could not be effectuated because the county terminated the partial confinement program. Hugh Putnam's judgment and sentence remains valid, and DOC may still administer the sentence.

11

No. 37588-9-III
*State v. Putnam*

CONCLUSION

We affirm the superior court's denial of Hugh Putnam's CrR 7.8 motion for early

release from incarceration.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, C.J.

12