[No. 33789. Department Two. April 25, 1957.]

JOHN H. METCALF, *Appellant*, v. MYRTLE V. METCALF, *Respondent*.[1]

[1]Reported in 310 P. (2d) 254.

*Chavelle & Millard,* for appellant.

*Bassett, Geisness & Vance* and *Stephen V. Carey,* for respondent.

DONWORTH, J.—This is an action for divorce instituted by the husband. The complaint alleged cruel treatment rendering plaintiff's life burdensome to the extent that he removed himself from the marital home. The wife answered, denying cruelty and affirmatively alleging that the husband had left home because he was enamored of another woman, but did not cross-complain for either divorce or separate maintenance. When plaintiff rested his case in chief, the trial court granted defendant's oral motion that the answer be amended to pray for separate maintenance. At the conclusion of the evidence, the court denied plaintiff a divorce and entered a decree of separate maintenance, awarding defendant support money of three hundred dollars per month. Plaintiff appeals.

The evidence showed that the parties were married in Seattle in 1933, and that no children were born to them. At the time of the trial, appellant had been for twenty-five years, and still was, employed by the Boeing Airplane Company. At that time, he had advanced to a supervisory position and was receiving a salary of about eleven thousand dollars per year. Respondent held gainful employment

from the time of the marriage until 1939, but has remained at home since then.

On December 24, 1949, appellant sued respondent for divorce, alleging cruelty consisting of nagging and excessive public and private criticism of him. A few weeks later, the couple became reconciled, and the action was dismissed on January 21, 1950.

After the dismissal of the first divorce action, the parties purchased a new home in the Magnolia district in Seattle and moved into it. At the time of the trial of the present action, their chief possessions were this house, certain securities, and a twenty-six-foot power cruiser, which was used mostly for appellant's pleasure.

In March, 1955, after a period of discord, appellant began looking for another place to live. An April 30th, he asked respondent if she would agree to a divorce and a property settlement; she refused. On May 15th, appellant moved out of the family home and did not live there again.

Appellant testified to a long history of arguments, misunderstandings, and criticisms of him by his wife during the twenty-three years of their marriage. On appeal, he sets out in his brief twenty-three instances of alleged cruel conduct to which he testified (all of them of a nonphysical nature), many of which he claims were not denied by respondent in her testimony.

To describe these instances in detail in this opinion, would serve no useful purpose. It will suffice to say that they include testimony by appellant that respondent criticized his manner of doing work about the house; heckled him while he drove the car; made him enter the house through the back door; criticized him for using and keeping the boat; belittled his knowledge of boats; became suspicious and angry when he came home late from work or from lodge meetings; falsely accused him of going out with other women; and made light of his problems connected with his work at Boeing's. The other alleged instances of cruelty are of a similar nature. He stated that because of this constant nagging he became nervous and had frequent headaches. He finally consulted a physician. Since separating

from his wife, appellant claimed that his health had improved. In addition to his own testimony, appellant introduced that of two men friends who had visited the parties in their home several times over periods of twelve and eight years respectively. These two witnesses testified that the couple had sometimes quarrelled and bickered, and that the atmosphere in their home was strained.

Respondent, in her testimony, explained some of these alleged incidents and habits, denied others, and let others go unmentioned. She said that she desired a reconciliation.

■ Appellant's principal assignment of error is directed to the trial court's conclusion that respondent was not guilty of cruel treatment which entitled him to a divorce. It is well settled in this state that nagging and insulting language may constitute cruelty justifying a divorce. *Detjen v. Detjen*, 40 Wn. (2d) 479, 244 P. (2d) 238 (1952), and cases cited. Similarly, cruelty can consist of a quarrelsome and indifferent attitude, or of unjustified fits of rage and jealousy. *Anderson v. Anderson*, 199 Wash. 696, 93 P. (2d) 290 (1939); *Fruehauf v. Fruehauf*, 25 Wn. (2d) 232, 170 P. (2d) 309 (1946).

· ■ The test of whether or not the language used and the attitude of one spouse toward the other constitutes cruelty, however, is subjective rather than objective. It is easy to establish that a physical beating of one spouse by the other is cruel treatment *per se*; it is much harder to determine whether any particular language or attitude amounts to cruel treatment *per se*. The determinative test as to whether or not a divorce should be granted, therefore, is not the words used or attitude adopted, but rather their effect upon the aggrieved party. *Thompson v. Thompson*, 16 Wn. (2d) 78, 132 P. (2d) 734 (1943); *Detjen v. Detjen*, *supra*.

■ The trial court found, in effect, that, *as between this husband and wife*, the language and conduct of respondent did not constitute cruelty, and that appellant was impelled by other reasons to leave the home. The trial judge had the parties before him, heard their testimony, and gauged their credibility on the basis of many subtle factors which

are unavailable to us. We cannot say that the alleged acts of respondent, even assuming *arguendo* that they were all committed, constituted cruelty as a matter of law; nor can we say, on the basis of the cold record before us, that the evidence preponderates against the trial court's conclusion that they did not constitute cruelty.

The trial court, in its oral opinion at the close of the case, summed up the evidence, in part, in these words:

"In the present case I do not believe that the points relied on by Mr. Metcalf can be considered as amounting to cruel treatment.

"It is a little bit hard to summarize this case in a few words, and it is particularly hard to evaluate the testimony without having regard to the personalities involved. . . .

"I think that that is the way I would characterize Mr. Metcalf on his testimony and on his appearance, a man who wants his own way and is pretty determined about it; and he wants to be looked up to and he wants to be admired. That may be sort of a carry-over from the time when he was starting out as an hourly wage employee without any particular education, without any particular standing.

"Now, let us look at Mrs. Metcalf.

"She is a person that has considerable spirit, I would say, and she has a good deal of capacity. She was employed for a while and I think she has been very much interested in her home.

"She is, I would say, a positive character. I would not expect her to accept any situation, regardless of whether it met her views as to what was desirable, without some comment. . . .

"I think his trouble is largely of his own making. I think that he has just failed to realize that it is possible for a husband and wife to have different viewpoints without the wife always being in the wrong.

"I do think that his contention that he was subjected continually to bickering, criticism, harrassing, etc., is not made out. I think these incidents that he tells about were largely of a trivial or unsubstantial nature.

"I think that the real cause of his desiring to leave is that he found pleasure in the society of one or more other women."

The testimony of appellant and of the two family friends whom he called as witnesses established that this

marriage, at least during the past few years, has been somewhat inharmonious. However, appellant did not sustain the burden of proving any one of the nine statutory grounds for divorce. As we have said in prior cases:

"This is a situation where it is easy to say that there is nothing to be gained by keeping this man and this woman yoked together; but neither incompatibility, uncongeniality, dissatisfaction, nor unhappiness constitutes grounds for divorce." *Neff v. Neff*, 30 Wn. (2d) 593. 192 P. (2d) 344 (1948).

"The most that can be derived from  .  .  . [the husband's] testimony is that he is unhappy in his marriage and the parties are incompatible. As we have said, these matters do not constitute grounds for divorce." *Best v. Best*, 48 Wn. (2d) 252, 292 P. (2d) 1061 (1956).

Appellant assigns error to the trial court's finding of fact No. 5, which reads, in part, as follows:

"The plaintiff did not leave the home of the parties because of any cruelty or personal indignities on the part of the defendant, but because the plaintiff had become enamored of another woman."

■ The evidence tending to show that appellant left the home because he was enamored of another woman consisted of respondent's testimony that a change came over him in the winter of 1955, and that she saw him with two different women on several occasions *after* he had left the home. Appellant's reasons for leaving are immaterial, as long as the trial court found that respondent was not guilty of cruel treatment which drove him from the home. In view of such a finding, his departure constituted an abandonment.

Appellant next contends that the trial court erred in allowing respondent, at the time appellant rested his case, orally to amend her answer to pray for separate maintenance in the event a divorce should be denied. He urges that the amendment was untimely; that it deprived him of notice of what he was to defend against; and that it was a "nullity" because it failed to allege the grounds relied upon or to ask any specific relief.

■ However, where the plaintiff husband in a divorce suit has left the home, and where he fails to show adequate

grounds for his departure or for granting him a divorce, the court should be able to make some realistic disposition of the case. With this in mind, the legislature in 1949 enacted RCW 26.08.120, which reads, in part, as follows:

"If the court determines after trial that no divorce or annulment shall be granted, it may enter a decree of separate maintenance in favor of the party entitled thereto, and make all necessary orders required for support, attorneys' fees, costs, and for the care, custody, support, and education of minor children; . . ."

We need not decide whether or not this statute authorizes the entry of a separate maintenance decree in the absence of any prayer for one. In the present case, appellant objected to the amendment on the ground that it was not timely, but did not ask for a continuance or claim prejudice. The trial court fully protected appellant against surprise. No new factual issues were thereafter injected into the case, all of respondent's evidence being relevant to her defense to the divorce action. At the end of a colloquy between the court and appellant's counsel relative to this matter, the latter practically conceded the propriety of the court's ruling. The evidence showing grounds for awarding respondent separate maintenance was supplied by appellant himself when he testified to the circumstances under which he had left the marital home. Since the court later found that circumstances did not justify him in leaving, the amendment was properly allowed under Rule of Pleading, Practice and Procedure 6(9), 34A Wn. (2d) 72. In a similar case, cited by neither counsel, we allowed the defendant spouse in a divorce suit to enter a cross-complaint for divorce at the conclusion of the plaintiff's evidence. *Paulson v. Paulson*, 37 Wn. (2d) 555, 225 P. (2d) 206 (1950).

Finally, we cannot see that appellant was prejudiced by respondent's failure to ask for a specific amount of support money or to present evidence of her living expense requirements. All facts material to that issue were already in the record. Appellant assigns error to the trial court's award of three hundred dollars per month, out of which respondent must make a monthly mortgage payment of fifty-five dollars.

In view of appellant's yearly income of eleven thousand dollars, and the manner in which the parties had been living, the trial court did not abuse its discretion in so fixing the amount.

■ Other aspects of the property arrangements made by the court in its decree are assigned as error, but since they are not argued by appellant in his brief we do not consider them. *Winslow v. Mell*, 48 Wn. (2d) 581, 295 P. (2d) 319 (1956).

The decree of the trial court is affirmed.

HILL, C. J., SCHWELLENBACH, ROSELLINI, and FOSTER, JJ., concur.

[1]Reported in 310 P. (2d) 240.