[No. 35286.    Department Two.    January 26, 1961.]

JOHN METCALF, *Respondent,* v. MYRTLE METCALF, *Appellant.*[1]

¹Reported in 358 P. (2d) 983.

*Bassett, Davies & Roberts*, for appellant.

*Koenigsberg & Hepfer*, for respondent.

FINLEY, C. J.—Myrtle Metcalf petitioned the trial court for an increase in her separate maintenance allowance. Soon thereafter, John Metcalf, her husband, brought an action for divorce. The cases were consolidated for trial.

The trial court granted respondent a divorce, decreed a property distribution, and denied appellant's request for alimony and attorney's fees. (The petition for an increase for separate maintenance, of course, became moot.)

This action represents respondent's third attempt to obtain a divorce. The first action, brought in 1949, was dismissed after the parties became reconciled. The second action was brought in 1955. The trial court in that case found that the wife was not guilty of cruelty as alleged, and that the husband had left their home because he had become enamored of another woman. A decree of separate maintenance, in the amount of three hundred dollars per month, was entered in favor of the wife. We affirmed the trial court in *Metcalf v. Metcalf* (1957), 50 Wn. (2d) 167, 310 P. (2d) 254.

In the instant case the trial court found:

"That the defendant Myrtle Metcalf, after the entry of the decree of separate maintenance on March 16, 1956, did indulge in a studied attempt to interfere with, harass, annoy and embarrass the plaintiff, and did attempt to alienate plaintiff's social contacts.

" . . .

" . . . [I]t was a spiteful, revengeful spirit which caused the defendant to conduct herself in the manner herein set forth, and further that the monetary consideration was a motivating factor in her attempts to chain the plaintiff to her, nothwithstanding this is his third effort to obtain a divorce decree in this court; that the objectionable conduct on her part was for the purpose of giving the plaintiff, as defendant expressed it to Mr. Black, a 'bad time,' which she succeeded in doing;

". . . . [T]hat her continuous tireless, incessant and relentless efforts have hung like a pall upon plaintiff, causing him to lose sleep; that said conduct affected his digestion, his ability to work, his health and peace of mind; that the defendant has heaped personal indignities upon him making his life burdensome."

Other findings of fact are consistent with the excerpts quoted above.

▪ Appellant's attack on the evidentiary basis of the trial court's findings of fact relative to the wife's conduct is without merit. Not only is there substantial evidence in the record to support the findings (on which basis we would affirm); but the evidence clearly preponderates in favor of the trial court's findings of fact.

▪ Appellant argues that the judgment in the 1955 divorce action—which stated that her conduct, complained of at that time, did not constitute such mental cruelty as to be a ground for a divorce—is binding on appellant husband in this action. It is true that under the doctrine of *res judicata* identical facts may not be relitigated. *Bodeneck v. Cater's Motor Freight System* (1939), 198 Wash. 21, 86 P. (2d) 766. A review of the record of the 1955 action satisfies us that the summary of the evidence in our opinion on the appeal[2] accurately describes the basis on which respondent then sought a divorce. Since the first case, the conduct of appellant wife has been much more extreme. Shortly after the decree of separate maintenance was entered, appellant called one of respondent's long-time friends and tried to persuade him that her husband was unworthy and unfaithful. The calls, which were at least partly successful in disrupting the friendship, were repeated over a period of two years. Appellant called respondent's

---

[2]"[Mrs. Metcalf] criticized his manner of doing work about the house; heckled him while he drove the car; made him enter the house through the back door; criticized him for using and keeping the boat; belittled his knowledge of boats; became suspicious and angry when he came home late from work or from lodge meetings; falsely accused him of going out with other women; and made light of his problems connected with his work. . . ." *Metcalf v. Metcalf* (1957), 50 Wn. (2d) 167, 310 P. (2d) 254.

supervisor at work and even the supervisor's wife in an effort to learn about respondent's activities. Appellant made a point of being seen at the boathouse where respondent kept a boat for the purpose of embarrassing him and his companions and, thereby, caused some of respondent's boating companions to avoid him. On two occasions appellant threatened to kill respondent. She also threatened to kill a woman with whom respondent had been keeping company. Conditions became so intolerable to respondent that he succeeded in obtaining a restraining order against appellant; she violated the restraining order and was held in contempt of court; thereafter, appellant continued to harass the woman who had been keeping company with respondent.

Clearly, the facts are not identical, and the decision in the prior case does not control the decision here.

Appellant also argues that the doctrine of recrimination precludes respondent from obtaining a divorce because of extra-marital relations with other women. We do not agree. It is true that in the prior divorce action the trial court found that respondent "had become enamored of another woman." However, as we said in *Hokamp v. Hokamp* (1949), 32 Wn. (2d) 593, 203 P. (2d) 357, the doctrine of recrimination

". . . is that a person seeking a divorce must be innocent of any substantial wrongdoing to the other party *of the same nature* as that of which complaint is made. . . ."

In the instant case, respondent's action for divorce is not based on any allegation of infidelity of his wife but, rather, rests on the facts outlined above, allegedly constituting mental cruelty. The conduct of the wife and the alleged wrongdoing of the husband as to which she complains are not of the same nature. The doctrine of recrimination, therefore, cannot be invoked.

All of the property distributed by the trial court is community property. Because the trial judge felt that the parties were equally responsible for its accumulation, he undertook to distribute it equally. The value of ap-

pellant's share slightly exceeds the value of the property awarded to respondent.

■ Respondent is insured through his employer under a group life insurance program. Respondent's policy has no cash surrender value. Although the policy can be converted to some form of individual insurance when respondent terminates his employment, this fact does not impart to the policy any present value. Appellant's assertion that, since all premiums to date have been paid with community funds, the trial court abused its discretion in not requiring respondent to continue her as the beneficiary of the policy is without merit.

■ The error assigned to the failure of the trial court to consider potential social security benefits in making the property distribution will not be considered on this appeal, because the matter was not raised in the trial court. *Kane v. Smith* (1960), 56 Wn. (2d) 799, 355 P. (2d) 827; *Davis v. Sill* (1960), 55 Wn. (2d) 477, 348 P. (2d) 215; *Ostiguy v. A. F. Franke Constr., Inc.* (1959), 55 Wn. (2d) 350, 347 P. (2d) 1049; *Timm v. Gilliland* (1959), 53 Wn. (2d) 432, 334 P. (2d) 539.

Appellant complains of injustice because the property awarded to her includes less value in liquid assets than does the property awarded to respondent. Consideration of the items of property involved compels the conclusion that the trial court was exceedingly fair in the division of the property.

In view of the fact that appellant has not been employed for twenty years, and that respondent is receiving a comfortable income, we believe that appellant should be awarded alimony in the sum of three hundred dollars per month for a period of one year. This should provide her with ample time to prepare herself for gainful employment.

The trial court did not make an award of attorney's fees to the appellant. This was left to us, pending the outcome of this appeal . We are convinced a fair total amount, for both trial and appeal, would be fifteen hundred dollars, and that appellant should be awarded that sum for attorney's fees.

The judgment of the trial court is modified as indicated above respecting alimony and attorney's fees; in all other respects it is affirmed. The parties hereto shall pay their own costs on appeal. It is so ordered.

HILL, WEAVER, ROSELLINI, and OTT, JJ., concur.

March 17, 1961. Petition for rehearing denied.